# 14 MAG 2579

ORIGINAL

Approved: *[signature]*

STANLEY J. OKULA, JR.
Assistant United States Attorney

Before:      HONORABLE KEVIN NATHANIEL FOX
             United States Magistrate Judge
             Southern District of New York

*[stamp: U.S. D... COURT NOV 17 2014 S. D. ... N.Y.]*

- - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA         :     SEALED
                                 :     COMPLAINT
        - v. -                   :
                                 :     Violations of:
KAREN ALAMEDDINE,                :     18 U.S.C. § 1343 and
    a/k/a "Karen Dean,"          :     26 U.S.C. § 7201
                                 :
                                 :
                    Defendant.   :
                                 :     DOC #  1
- - - - - - - - - - - - - - - - - - - - - - - - - - -x

SOUTHERN DISTRICT OF NEW YORK, ss.:

VIRGINIA A. COLOMBO, being duly sworn, deposes and says that she is a Postal Inspector with the United States Postal Inspection Service and charges as follows:

## COUNT ONE

From in or about late 2008 through in or about March 2014, in the Southern District of New York and elsewhere, KAREN ALAMEDDINE, a/k/a "Karen Dean," the defendant, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, willfully and knowingly, and for the purpose of executing such scheme and artifice, did transmit and cause to be transmitted by means of wire communications in interstate commerce, writings, signs, signals, pictures, and sounds, to wit, DEAN engaged in a scheme to defraud the Hereditary Disease Foundation ("HDF"), and sent electronic transfers of money and other communications in interstate commerce to further the scheme.

(Title 18, United States Code, Section 1343)

## COUNTS TWO THROUGH SIX

From on or about January 1 of each of the calendar years set forth below, through on or about the filing for each calendar year, in the Southern District of New York and elsewhere, KAREN ALAMEDDINE, a/k/a "Karen Dean," the defendant, willfully and knowingly did

attempt to evade and defeat a substantial part of the income tax due and owing by KAREN ALAMEDDINE, a/k/a "Karen Dean," the defendant, to the United States of America for the calendar years 2009 through 2013, by various means, including, among others, preparing and causing to be prepared, signing and causing to be signed, and filing and causing to be filed, false and fraudulent U.S. Individual Income Tax Returns, Forms 1040, for the calendar years 2009 through 2013, which returns falsely omitted substantial income obtained from a scheme devised by DEAN to defraud the HDF, and thereby substantially understating DEAN's total income, adjusted gross income, taxable income, and tax due and owing each year, as set forth in part below:

| COUNT | TAX YEAR | TAXABLE INCOME PER RETURN | UNREPORTED INCOME | ADDITIONAL TAX DUE AND OWING TO IRS |
|-------|----------|---------------------------|-------------------|-------------------------------------|
| 2 | 2009 | $82,773 | $342,332 | $109,573 |
| 3 | 2010 | $67,793 | $385,000 | $126,792 |
| 4 | 2011 | $60,693 | $262,254 | $ 75,776 |
| 5 | 2012 | $100,640 | $309,250 | $ 95,381 |
| 6 | 2013 | $49,761 | $530,000 | $170,657 |

(Title 26, United States Code, Section 7201)

The bases for my knowledge and the foregoing charge are, in part, as follows:

## I.    Background

1.   I am a Postal Inspector with the United States Postal Inspection Service ("Postal") and I have been personally involved in the investigation of this matter, together with agents from the Criminal Investigation Division of the Internal Revenue Service.  I have been a Postal Inspector with Postal for more than 2 years.  During my career, I have worked on cases involving public white-collar fraud such as mail, wire, and bank fraud, as well as money laundering.  I have also worked on cases involving a variety of tax offenses, including tax evasion.  This affidavit is based upon my conversations with law enforcement agents and others and my examination of reports and records.  Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

2.   The Hereditary Disease Foundation ("HDF") is a New York-based nonprofit organization whose core mission is to cure genetic illnesses by supporting basic biomedical research.  Founded in or about 1968 by Dr. Milton Wexler when his wife was diagnosed with Huntington's Disease,[1] the HDF uses a variety of strategies --- including workshops, grants, fellowships, and targeted research contracts --- to solve the mysteries of genetic disease and develop new treatments and cures. The HDF is reported to have played a role in the discovery of

---

[1] Huntington's Disease ("HD") is a rare, adult-onset, progressive neurodegenerative disease. Named for Dr. George Huntington, who first described this hereditary disorder in 1872, HD is now recognized as one of the more common genetic disorders. More than a quarter of a million Americans have HD or are "at risk" of inheriting the disease from an affected parent.

the HD gene,[2] known as HTT or "Huntingtin." In particular, the HDF recruited and supported scientists around the world who worked together as part of the Huntington's Disease Collaborative Research Group in a multi-year search to identify, or "capture," the HTT gene. The research included that of current HDF president Nancy Wexler, who studied and mapped over two decades a high incidence of HD in two Venezuelan communities.

3. The HDF, which is funded largely through private donations and gifts, has, over its lifetime, given over $50 million to support research in genetics, gene therapy, molecular and cell biology, cell survival and death, neurophysiology, neuropharmacology and other areas relevant to understanding inherited diseases. Between at least 2006 and continuing through 2014, the HDF's giving has been effectuated largely through research and other grants of between $10,000 and $50,000.

4. KAREN ALAMEDDINE, a/k/a "Karen Dean," the defendant, was employed by the HDF between 2005 and 2014. Beginning in approximately late 2008, when the HDF's only other accounting and book-keeping employee retired, ALAMEDDINE served in the position of Controller. In carrying out her duties in that position, ALAMEDDINE, who has an M.B.A. and a self-described "comprehensive knowledge" of accounting and taxes, enjoyed almost exclusive responsibility for overseeing various aspects of the HDF's internal accounting and financial affairs, including the delivery of grant money to grant recipients, the payment of the HDF's bills, interaction with the HDF's outside auditors, management of the HDF's principal bank and checking accounts, and the making of entries in the HDF's accounting software, which was done through the popular accounting software called QuickBooks.

## II.   The Scheme to Defraud the HDF (Count One)

5. Beginning in or about late 2008 and continuing through early 2014, KAREN ALAMEDDINE, a/k/a "Karen Dean," the defendant, engaged in a massive scheme to defraud the HDF by diverting over $1.8 million of the HDF's funds to her own bank accounts and for her own personal use. ALAMEDDEINE executed the scheme principally by disguising QuickBooks entries to make what in reality were transfers to her personal bank account appear as if they were wire or bank transfers made to pay monies to HDF grant recipients. These transfers were further disguised because ALAMEDDEINE received the diverted funds through an account she opened and controlled at the same financial institution that held the funds from which HDF grants were disbursed. In addition, ALAMEDDEINE further disguised the fraud by creating, apparently out of whole cloth, a fictitious accounting firm named Davis & Greene, based in Washington D.C., which was, according to ALAMEDDINE, retained to prepare certain tax returns for the HDF for the 2012 and 2013 tax years. ALAMEDDINE appears to have created the fictitious accounting

---

[2] Huntingtin (HTT) was the first disease-associated gene to be molecularly mapped to a human chromosome, in or about 1983. Ten years later, in 1993, scientists identified the DNA sequence and determined the precise nature of the HD-associated mutation in HTT. Today, scientists can use molecular genetic approaches to analyze certain aspects of the HTT gene in individuals, and therefore accurately determine whether an individual will suffer from HD later in life. No cure for HD currently exists.

and tax preparation firm after the accounting firm that had been previously retained by the HDF resigned.[3]

6.  For the years 2009 through 2013, KAREN ALAMEDDINE, a/k/a "Karen Dean," the defendant, fraudulently diverted the following approximate amounts to her own personal bank account:

| YEAR | AMOUNT | |
|------|--------|---|
| 2009 | $342,332 | |
| 2010 | $385,000 | |
| 2011 | $262,254 | |
| 2012 | $309,250 | |
| 2013 | $530,000 | |

7.  After KAREN ALAMEDDINE, a/k/a "Karen Dean," the defendant, fraudulently transferred the aforementioned amounts to her own personal bank account, she transferred the funds to yet other accounts she controlled and thereafter used those funds for various personal purposes, largely to pay personal bills. In particular, following the transfer of the diverted grant monies to her own accounts between late 2008 and 2013, ALAMEDDINE wire transferred or otherwise bank-transferred the diverted funds to accounts controlled by ALAMEDDINE in the following names: Abacus Accounting, Chez Cheval Ranch, Dean & Co., Karen Dean Exports, Karen Dean Properties, Hussein and Karen Alameddine, Karen Alameddine, Karen Dean and Vida Rossi, and Karen J. Alameddine (Glendale Area Schools Federal Credit Union bank account).  Among the personal bills ALAMEDDINE paid with the funds fraudulently diverted to these accounts were those to pay utility bills, car payments, and personal mortgages.

8.  Representatives of the HDF have informed your deponent and others in law enforcement that after KAREN ALAMEDDINE, a/k/a "Karen Dean," the defendant, resigned from the HDF in early 2014, they received a phone call from a grant recipient who had not received his grant check from the HDF, which was the typical way that ALAMEDDINE disbursed funds to grant recipients.  Upon investigation, representatives of the HDF learned that the HDF bank statements showed an online wire transfer, purportedly representing the grant amount, which had been fraudulently diverted to ALAMEDDINE's personal bank account.

9.  My investigation has revealed that, in carrying out the fraudulent diversions from the HDF, ALAMEDDINE caused various interstate wire communications and wire transfers to occur, including those from California (the location from which ALAMEDDINE carried out her duties for the HDF for most of the period between 2010 and 2014) and the New York based branch of the financial institution where the HDF kept its principal accounts.

---

[3]  The reasons for the resignation of the firm are unclear, as ALAMEDDINE was the one exclusively responsible for liaising with the outside accountants and tax preparers.

## III.    Income Tax Violations (Counts Two through Six)

10.    Records of the Internal Revenue Service show that KAREN ALAMEDDINE, a/k/a "Karen Dean," the defendant, filed a U.S. Individual Income Tax Return, Form 1040, for each of the calendar years 2009 through 2013.  ALAMEDDINE declared each filed return to be true and correct under penalties of perjury.  As detailed below, for each of the years 2009 through 2013, ALAMEDDINE falsely and fraudulently omitted the reporting of the income she received from the above-described fraud scheme.  Those falsities resulted in ALAMEDDINE's evasion of substantial amounts of income for each of the years between 2009 and 2013.



11.    In 2009, ALAMEDDINE caused 11 wire transfers totaling $342,332.68 to be sent to a bank account owned and controlled by her from the bank account of the HDF.  Each of these wire transfers is alleged by the HDF to have been taken by fraud by ALAMEDDINE.  On or about October 16, 2010, ALAMEDDINE filed a U.S. Individual Income Tax, Form 1040, which reported Taxable Income of $82,773 but did not report as income any of the funds taken by fraud from the HDF.

12.    In 2010, ALAMEDDINE caused 8 wire transfers totaling $385,000 to be sent to a bank account owned and controlled by her from the bank account of the HDF.  Each of these wire transfers is alleged by the HDF to have been taken by fraud by ALAMEDDINE.  On or about March 31, 2013, ALAMEDDINE filed 2010 U.S. Individual Income Tax via Form 1040, which reported Taxable Income of $67,793 but did not include as income any of the funds taken by fraud from the HDF.

13.    In 2011, ALAMEDDINE caused 10 wire transfers totaling $262,254 to be sent to a bank account owned and controlled by her from the bank account of the HDF.  Each of these wire transfers is alleged by the HDF to have been taken by fraud by ALAMEDDINE.  For the calendar year 2011, ALAMEDDINE reported $60,693 of Taxable Income on her U.S. Individual Income Tax Return, Form 1040, filed with the IRS on October 18, 2012, but did not include as income any of the funds taken by fraud from the HDF.

14.    In 2012, ALAMEDDINE caused 14 wire transfers totaling $309,250 to be sent to a bank account owned and controlled by her from the bank account of the HDF.  Each of these wire transfers is alleged by the HDF to have been taken by fraud by ALAMEDDINE.  For the calendar year 2012, ALAMEDDINE reported $100,640 of Taxable Income on her U.S. Individual Income Tax Return, Form 1040, filed with the IRS on April 15, 2013, but did not include as income any of the funds taken by fraud from the HDF.

15.    In 2013, ALAMEDDINE caused 15 wire transfers totaling $530,000 to be sent to a bank account owned and controlled by her from the bank account of the HDF.  Each of these wire transfers is alleged by the HDF to have been taken by fraud by ALAMEDDINE.  For the calendar year 2013, ALAMEDDINE reported $49,761 of Taxable Income on her U.S. Individual Income Tax Return, Form 1040, filed with the IRS on June 18, 2014, but did not include as income any of the funds taken by fraud from the HDF.

WHEREFORE, deponent prays that KAREN ALAMEDDINE, a/k/a "Karen Dean," the defendant, be arrested, and imprisoned or bailed as the case may be.  In addition, due to the nature of the allegations contained herein, I respectfully request that this Complaint and any accompanying warrant be sealed.

VIRGINIA A. COLOMBO
Postal Inspector
United States Postal Inspection Service

Sworn to before me this
17th day of November, 2014

HONORABLE KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

6