ecj9alac

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4                v.                        14 CR 0808 (GHW)

5   KAREN ALAMEDDINE,

6                   Defendant.

7   ------------------------------x

8                                          New York, N.Y.
                                           December 19, 2014
9                                          2:39 p.m.

10
    Before:
11
                        HON. GREGORY H. WOODS
12
                                           District Judge
13

14                        APPEARANCES

15  PREET BHARARA
         United States Attorney for the
16       Southern District of New York
    STANLEY J. OKULA
17       Assistant United States Attorney

18  FEDERAL DEFENDERS
         Attorney for Defendant
19  ROLAND THAU

20  ALSO PRESENT:   JOSHUA DRATEL, C.J.A.

21

22

23

24

25

ecj9alac

1           (In open court; case called)

2           MR. OKULA:  Good afternoon, your Honor, Stanley Okula

3   for the United States.

4           THE COURT:  Good afternoon.

5           MR. THAU:  Good afternoon, your Honor.

6           Roland Thau for Ms. Alameddine.

7           MR. DRATEL:  Good afternoon, your Honor.

8           Josh Dratel.  I'm CJA today.

9           THE COURT:  Thank you very much.  Good afternoon.

10          Good afternoon, Ms. Alameddine.  Thank you all for

11  being here.

12          Ms. Alameddine, as you know, you've been named in a

13  seven-count indictment.  Your case has been assigned to me.

14  I'm Judge Woods.  The purpose of this proceeding is to do a

15  number of things.  First to make sure that you have a copy of

16  the indictment.  Second, to inform you of the charges against

17  you.  Third, discuss your plea.  And fourth, to discuss what

18  happens next.

19          Now before I get to any of those things I want to talk

20  about your letter to me and the question of appointment of

21  counsel for you.

22          I understand that at your initial appearance before

23  Judge Maas Judge Maas appointed Mr. Thau to represent you.

24  Judge Maas also ordered that you file one of these financial

25  affidavits by January 5.  The purpose of the affidavit is to

ecj9alac

1     make sure that you're entitled to free counsel.  And I'm just

2     going to ask -- I'm going to take the opportunity now to remind

3     you of Judge Maas's order to complete one of these by

4     January 5, so if you can do that I'd appreciate it.

5              MR. THAU:  Could I address that issue, your Honor?

6              THE COURT:  Please, Mr. Thau.

7              MR. THAU:  Your Honor, I was present on November 3

8     when Ms. Alameddine was presented before Judge Maas.  And the

9     reason no such financial affidavit was then handed up to the

10    Court was that the defendant's financial wherewithal is in

11    doubt.  And indeed it was our suspicion that the government

12    might have seized some of the assets or put some kind of hold

13    on them.  And, therefore, we're really not in a position either

14    then or indeed two days later to file another affidavit.  And

15    so that we haven't.

16             And very frankly, the fact that the December 5 date

17    passed --

18             THE COURT:  January 5, I think.

19             MR. THAU:  I'm sorry?

20             THE COURT:  I think it was January 5.

21             MR. THAU:  Excuse me.  Oh, January 5.  I apologize.

22    So we're not in default yet.  I was about to take the wrap for

23    having failed to comply with that order.

24             So, therefore, forgive me for having wasted your time

25    in trying to explain something that didn't need any

ecj9alac

1     explanation.

2               THE COURT:  No.  That's fine.  I appreciate any

3     explanation.  I'm curious about the comment regarding inability

4     to determine the extent of Ms. Alameddine's assets due to a

5     potential seizure by the government.

6               Mr. Okula, can I just ask you is that at issue here?

7     Has the government seized some of her assets?

8               MR. OKULA:  There is no formal restraint in place,

9     your Honor.  Frequently when we anticipate getting seizure

10    warrants we write letters of request to a financial institution

11    informing them that it is our belief, based on a tracing

12    analysis, that they hold assets that are subject to potential

13    seizure.  And truth be told, it's almost invariably our

14    experience that when we send essentially a warning letter of

15    that to a financial institution they typically hold the assets

16    at that point.

17              There is one financial institution by the name of

18    Umpqua U-M-P-Q-U-A that we've done tracing analysis with

19    respect to and that we've notified that we intend to serve them

20    with seizure warrants.  But beyond that, your Honor, there are

21    no other financial institutions to my knowledge that have

22    received either formal or informal either notices or restraints

23    with respect to assets.

24              I would just add, your Honor, that the government's

25    intention or steps taken to effectuate seizures, of course,

ecj9alac

1   doesn't have really anything to do with the defendant listing

2   what those assets are.  The fact that they may be subject to

3   restraint might ultimately play into the analysis about whether

4   she may make use of certain of assets further on down the road.

5   I'm happy to speak it about it then.  I just make that

6   observation.

7              MR. THAU:  May I amplify on what has just been said?

8              THE COURT:  Please.

9              MR. THAU:  My review of either the complaint or the

10   indictment or both suggests to me that a fairly substantial

11   number of valuable jewelry was, in fact, taken from the

12   defendant and is being held by the government.  Now, if we look

13   at the typical financial affidavits which the defendant is

14   expected to sign, you'll note that it calls not only for monies

15   that might be on deposit in banks but as well for the

16   declaration of valuable properties.  And I believe that the

17   government will concede that much of this jewelry was actually

18   seized and kept, therefore, not available.

19              MR. OKULA:  I can confirm that, your Honor, that in

20   connection with her arrest in Boston we are still in possession

21   of the luggage and the jewelry that attended her arrest.

22              THE COURT:  Thank you.

23              I thank you for your comments, Mr. Thau.  I think that

24   Ms. Alameddine must complete this affidavit and comply with the

25   order.  The affidavit asks that she identify whether or not she

ecj9alac

1    owns any valuable property and must -- you're conceding, and

2    you're not, that she does not own the assets that are in the

3    custody of the United States.  I think that you can still

4    respond and complete this affidavit.  I'll review it when you

5    submit it to me.  And you do have some more time.  I just

6    wanted to make sure that you had an opportunity to -- I wanted

7    to take this opportunity to flag that obligation for you.

8           Let me just say, Ms. Alameddine, before I give you an

9    opportunity to speak or speak through your lawyer.  I have read

10   your letter requesting reassignment of counsel.  I you're

11   entitled to free counsel, one of the great things about our

12   country.  But you should know that you're not entitled to

13   necessarily the counsel of your choice.

14           THE DEFENDANT:  Correct.

15           THE COURT:  So what I wanted to do and the reason why

16   there's another potential alternative lawyer here.  I will give

17   you -- I will reassign another lawyer to you now, I'll

18   telegraph what I'm willing to do.  But I also wanted to ask

19   whether or not it would be -- whether or not you would like to

20   take the opportunity to discuss this with Mr. Thau.  I could

21   provide him, with your permission, with a copy of the letter

22   that you've given me to see whether or not you can proceed with

23   him.  He's a competent and capable attorney.  And these are

24   stressful times to interact with an attorney for the first

25   time.  And I just wanted to give you an opportunity to discuss

ecj9alac

1       the issues that you raised in your letter to me with him before

2       I assign another lawyer to you.  So I just want to give you

3       that opportunity.  And in the service of that opportunity I'd

4       like to provide Mr. Thau a copy of the letter that you gave to

5       me, if that's okay, so that he can review it and have an

6       informed conversation with you about the issues that you

7       raised.

8                   THE DEFENDANT:  That's fine.

9                   THE COURT:  Thank you.

10                  MR. THAU:  Your Honor, on this topic, may it be

11      understood that of course Ms. Alameddine appreciates the

12      courtesy you're extending to her but at the same time it's of

13      some importance to me that whatever little conference we are

14      going to have in a moment it not be deemed to be any pressure

15      on my part to try to convince this lady to keep me as counsel.

16                  THE COURT:  Absolutely.  And I don't want -- thank

17      you, Mr. Thau.  And I don't want to -- that's why I telegraphed

18      in advance that I've asked an alternative counsel to come.  He

19      is sitting here in the courtroom and available to you.  I'll

20      happily replace Mr. Thau.  But it's -- given the nature of this

21      process, I thought that it would be fair to give you that

22      opportunity before I took that step.

23                  What I thought I would do, although it's unusual, I'm

24      going to hand up to Mr. Thau the copy of the letter.  I'm going

25      to take a recess to allow you to have the opportunity to have

ecj9alac

1    that conversation with Mr. Thau in the back area here and I'm

2    going to ask for my deputy to call me back when you're ready to

3    proceed and then we'll go forward.  Please just let me know how

4    much time you want and need and I'll come back when you're

5    ready.  Okay.

6              MR. THAU:  One more unorthodox suggestion --

7    specializing in unorthodoxy.  Since Mr. Dratel, a very

8    experienced lawyer is here; and if it's okay with you and with

9    him, I would suggest that the defendant and the two of us

10   perhaps confer together so that she might benefit from his

11   wisdom and his insight that he's providing.  He is willing to

12   do that -- and I haven't discussed that with him, Mr. Dratel

13   because I didn't know.

14             MR. DRATEL:  That's fine.

15             MR. THAU:  Is that okay?

16             MR. DRATEL:  That's fine with me.

17             It's really, I guess, Ms. Alameddine's choice if she

18   wants to meet with us at the same time; serially; at the same

19   time and then serially; whatever she prefers.

20             THE COURT:  Here is what I'm going to do.

21             Mr. Okula, do you have any objection to that proposal?

22             MR. OKULA:  None at all.

23             THE COURT:  I'm going to step down and let you discuss

24   that with Ms. Alameddine; and you, Ms. Alameddine, can make the

25   choice that you think is in your best interest.

ecj9alac

```
 1            (Recess)
 2            THE COURT:  We took a recess to allow Ms. Alameddine
 3    an opportunity to discuss how she wishes to proceed with this
 4    case with Mr. Thau and I believe also Mr. Dratel.  Can you tell
 5    me what we're doing.
 6            MR. THAU:  Your Honor, Ms. Alameddine will give you
 7    her answer herself.  We don't know what it is yet.
 8            THE COURT:  Okay.  Thank you.
 9            MR. THAU:  We'll learn it together with you.
10            THE DEFENDANT:  Your Honor, though I feel that
11    Mr. Thau is a very good attorney, I'm sure he is, my family has
12    looked up information about him, but I do feel that I need to
13    go with what's best for me at this time and my feelings; so I'd
14    like to go with Mr. Dratel if I could, please.
15            THE COURT:  That's fine.  Thank you very much.  Thank
16    you for that.  And I think it's, at this stage in the process
17    there's -- it's easy for me to substitute counsel.  So don't
18    feel any hesitancy in doing it.
19            Mr. Dratel, are you willing to assume representation
20    of Ms. Alameddine in this matter?
21            MR. DRATEL:  Yes, I am, your Honor.
22            THE COURT:  Mr. Thau, do you wish to withdraw as
23    counsel for Ms. Alameddine?
24            MR. THAU:  Yes, if you please, your Honor.
25            THE COURT:  You're excused.
```

ecj9alac

1        MR. THAU:  Now, your Honor, I had prepared ahead of

2   time a copy of my entire file, which I turn over to Mr. Dratel

3   and I understand the government has a CD which it was prepared

4   to give me and which it will now, I assume, give my successor.

5        THE COURT:  Thank you.  We'll handle that momentary.

6        MR. DRATEL:  Mr. Okula has actually given me the CD.

7   I have possession of it.

8        THE COURT:  Thank you very much.

9        THE DEFENDANT:  Thank you.

10        THE COURT:  So is it's Dratel or Dratel?

11        MR. DRATEL:  Dratel.

12        THE COURT:  Thank you very much, Mr. Dratel.  I'm

13   going to appoint you as CJA counsel for Ms. Alameddine.  As

14   you've just heard, she needs to fill in the financial affidavit

15   by January 5; and if there's any paperwork that you need me to

16   sign in order to appoint you, please give it to me and I will

17   do so.

18        MR. DRATEL:  Thank you.

19        THE COURT:  Are you prepared to go forward at this

20   time with Ms. Alameddine's arraignment?

21        MR. DRATEL:  Let me just ask her one question, your

22   Honor.

23        THE COURT:  Thank you.

24        (Pause)

25        MR. DRATEL:  Yes, we're prepared to go forward, your

ecj9alac

1    Honor.

2                    THE COURT:  Thank you very much.

3             So Ms. Alameddine, before we proceed I'm going to ask

4    you some questions.  If you don't understand any of my

5    questions at any time, if you want to consult with Mr. Dratel

6    at any time, please just let me know.  I will give you as much

7    time as you need to do that.  It's important that you

8    understand each of these questions before you answer.  They are

9    designed to allow me to understand your ability to knowingly,

10   intelligently respond to the questions that I'm going to ask

11   you later on with more, what I'll call, legal significance.

12            So first, Ms. Alameddine, tell me what your full name

13   is, please.

14                   THE DEFENDANT:  Karen Juanita Alameddine.

15                   THE COURT:  How old are you?

16                   THE DEFENDANT:  Fifty-seven.

17                   THE COURT:  Where were you born?

18                   THE DEFENDANT:  Detroit, Michigan.

19                   THE COURT:  Thank you.  How far did you go in school?

20                   THE DEFENDANT:  I have an MBA in accounting.

21                   THE COURT:  Thank you.  And can you just tell me

22   briefly your employment experience.

23                   THE DEFENDANT:  Mostly accounting.  Assistant to a

24   comptrollers.  Comptroller.  I was finance director for one

25   organization.

ecj9alac

1          THE COURT:  Are you currently or have you recently

2     been treated or hospitalized for any mental illness?

3          THE DEFENDANT:  No.

4          THE COURT:  Are you currently or have you recently

5     been under the care of a physician, psychiatrist, or

6     psychologist?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Would you care to tell me something about

9     the nature of that treatment.

10          Let me just tell you I'm trying to get a sense of

11     whether or not that's going to impact your ability to

12     understand and participate in the proceedings today.

13          THE DEFENDANT:  Just basically psychotherapy once a

14     week for anxiety and sometimes depression but, depression -- it

15     was mostly anxiety.

16          THE COURT:  Is your mind clear today?

17          THE DEFENDANT:  Yes.

18          THE COURT:  Do you understand what's happening in

19     these proceedings?

20          THE DEFENDANT:  Yes, your Honor.

21          THE COURT:  And can I ask have you -- are you

22     currently or have you recently been hospitalized or treated for

23     drug addiction?

24          THE DEFENDANT:  No, your Honor.

25          THE COURT:  Within the last 24 hours have you used or

13

ecj9alac

1    taken any alcohol, drugs, or medication?

2            THE DEFENDANT:  Just prescription medication.  High

3    blood pressure.

4            THE COURT:  Thank you.  Generally do you understand

5    what's happening in the proceedings here today?

6            THE DEFENDANT:  Correct.  Yes.

7            THE COURT:  Thank you.  So let me know if at any time

8    you have any problems understanding what's happening.  I'm

9    happy to take the time.

10           So Ms. Alameddine as I said earlier, I understand

11   you've already had an initial appearance before a magistrate

12   judge.  He's informed you of certain of your rights.  Because

13   of the importance of those rights, I'm going to review your

14   right to remain silent with you again here now.

15           You have the right to remain silent.  You do not have

16   to say anything to anyone.  If you give up that right and make

17   a statement, the prosecutor can use everything that you say

18   against you.  Therefore, I strongly suggest that you not say

19   anything to unless you and your lawyer decide that it's in your

20   best interest to do so.  If you've already given a statement,

21   you don't have to say anything else.  If you decide to go ahead

22   and make a statement, you have the right to stop at any time.

23           Do you understand that?

24           THE DEFENDANT:  Yes.

25           THE COURT:  So, Mr. Dratel is now representing you in

ecj9alac

1   these proceedings.  I just heard you said that you want him to

2   represent you.  But do you wish him to continue to represent

3   you in these proceedings today?

4                THE DEFENDANT:  Correct, yes.

5                THE COURT:  So, Ms. Alameddine, have you seen a copy

6   of the indictment in this case?

7                THE DEFENDANT:  Yes, I have, your Honor.

8                THE COURT:  And Mr. Dratel, have you had an

9   opportunity to review the indictment and to discuss it with

10  Ms. Alameddine; and if not, I'd be happy to give you that time.

11               MR. DRATEL:  I've discussed it with her.  I haven't

12  actually seen the physical copy of it.  So if I could just have

13  a moment.  Mr. Okula is handing me a copy.

14               THE COURT:  Thank you.  Please take your time.

15               (Pause)

16               MR. DRATEL:  Thank you, your Honor.  I've had a chance

17  to review it.

18               Why don't you discuss it now with your client.  Please

19  take your time.

20               (Pause)

21               Thank you, your Honor.

22               THE COURT:  Have you now had an opportunity to both

23  review the indictment and to discuss it with your client?

24               MR. DRATEL:  Yes, your Honor.

25               THE COURT:  Mr. Okula would you please summarize the

ecj9alac

1    charges on which Ms. Alameddine is being arraigned today.

2              MR. OKULA:  I'd be happy to, your Honor.

3              Count One charges a wire fraud scheme that existed

4    between approximately 2008 and 2014 pursuant to which the

5    defendant, as the comptroller of a not-for-profit organization

6    known as the Hereditary Disease Foundation located here in

7    Manhattan, she fraudulently embezzled and took by fraud in

8    excess of $1.8 million of the Foundation's money.

9              She accomplished that, according to the indictment,

10   principally by disguising certain transfers in the books and

11   accounting records of the Foundation to make what were in

12   reality transfers to her own bank accounts be disguised as

13   transfers of monies to grant recipients.

14             The Hereditary Disease Foundation, among other things,

15   raises money through private donations and gives the bulk of it

16   away to grant recipients who do genetic research to try to cure

17   some of the gravest genetic diseases.  That is Count One, your

18   Honor.

19             Count Two charges principally a money laundering

20   conspiracy pursuant to which the defendant engaged in financial

21   transactions after she transferred the $1.8 million to her own

22   account at Bank of America and then on to other entities and

23   other bank accounts in order to do two things:  One, foster her

24   tax evasion activity; that, she didn't report as income any of

25   the $1.8 million she obtained and took by fraud; and two, in

ecj9alac

order to disguise and hide her underlying embezzlements, that's

why she effectuated the subsequent financial transactions.  So

that is Count Two, the money laundering count.

Counts Three through Seven are tax evasion counts that

allege for the tax years 2009 through 2013 the defendant filed

income tax returns with the IRS, that she prepared and signed

under penalties of perjury, in which she falsely understated by

significant amounts what her total income was and, therefore,

what her tax deficiency or tax amounts due and owing were.  The

essence of the tax evasion charge is that the defendant failed

to report the income she received pursuant to the fraud scheme

for each of the tax years 2009 through 2013.

That is the summary of the charges your Honor.

THE COURT:  Thank you very much.

Now, Ms. Alameddine, you have the right for me to read

to you out loud the indictment.  You also can waive that right.

So let me ask:  Would you like for me to read the indictment

out loud to you now on the record?

THE DEFENDANT:  No, your Honor.  I waive it.

THE COURT:  Counsel, do you waive the formal reading

of the indictment?

MR. DRATEL:  Yes, your Honor.  Thank you.

THE COURT:  So let me ask you to stand now if you

would please, Ms. Alameddine.

Do you understand what you've been charged with?

ecj9alac

1            THE DEFENDANT:  Yes, your Honor.

2            THE COURT:  So Count One charges you with wire fraud.

3     How do you plead to that count?

4            THE DEFENDANT:  Not guilty, your Honor.

5            THE COURT:  Count Two charges you with money

6     laundering.  How do you plead to that count?

7            THE DEFENDANT:  Not guilty, your Honor.

8            THE COURT:  Count Three charges you with tax evasion

9     for the year 2009.  How do you plead to that count?

10           THE DEFENDANT:  Not guilty.

11           THE COURT:  Count Four charges you with tax evasion

12    for the year 2010.  How do you plead to that count?

13           THE DEFENDANT:  Not guilty, your Honor.

14           THE COURT:  Count Five charges you with tax evasion

15    for the year 2011.  How do you plead to that count?

16           THE DEFENDANT:  Not guilty, Your Honor.

17           THE COURT:  Count Six charges you with evasion for the

18    year 2012.  How do you plead to that count?

19           THE DEFENDANT:  Not guilty, your Honor.

20           THE COURT:  Count Seven charges you with tax evasion

21    for the year 2013.  How do you plead to that count?

22           THE DEFENDANT:  Not guilty, your Honor.

23           THE COURT:  Thank you very much, Ms. Alameddine.  Your

24    pleas of not guilty are accepted.

25           You can be seated.

ecj9alac

1           THE DEFENDANT:  Thank you.

2           THE COURT:  So, Mr. Okula, can I turn to you and ask

3    you if you could just to briefly describe what evidence the

4    government expects to use in the course of prosecuting this

5    case.

6           MR. OKULA:  Yes, your Honor.  In addition to live

7    witnesses in the form of representatives from the Hereditary

8    Disease Foundation who will testify about the defendant's

9    application for a position as a comptroller, pursuant to which

10   she submitted a resume talking about her extensive experience

11   as a comptroller and extensive experience with accounting and

12   tax issues; and in addition to personnel from the Internal

13   Revenue Service who will testify about the defendant's filings

14   with the IRS for each of the tax years at issue pursuant to

15   which she filed tax returns, which she signed under penalty of

16   perjury, the evidence will come in principally, your Honor,

17   through various financial records.  I can break them down in

18   various categories.  First, there are records from the

19   Hereditary Disease Foundation in the form of their QuickBooks

20   records, their principal accounting software that they

21   employed, that show the disguised transfers that the defendant

22   engineered.  We would also produce bank records from Bank of

23   America where Hereditary Disease Foundation principally kept

24   its accounts over which the defendant had virtually unfettered

25   control over the various accounting and the banking of the

ecj9alac

1    organization.  We'll also produce bank records from a bank

2    account that the defendant herself opened up at that same bank,

3    Bank of America, into which she made the embezzled transfers.

4    We will further have bank records from a variety of different

5    financial institutions, principally ones west that the

6    defendant opened up and into which she transferred ultimately

7    the proceeds of her fraud scheme.  So that in essence would be

8    the evidence that we would produce.

9            I have produced, your Honor -- as I indicated in our

10   application for a speedy trial exclusion, I indicated to the

11   Court that we intended to get a start, even before the

12   arraignment, on our gathering and production of the discovery.

13   And we've made some significant progress along those lines.  I

14   handed to Mr. Dratel, the successor attorney, this afternoon,

15   prior to the formal arraignment, a disk containing over 6600

16   pages of discovery, consisting of the defendant's tax returns,

17   bank records, various productions of records made to us by the

18   victim in the case, the Hereditary Disease Foundation.  So

19   we've gone a long way in producing what I would estimate, your

20   Honor, is about 75 to 90 percent of the documentary discovery

21   that we have to produce in this case.

22           THE COURT:  Thank you.  Can I ask how long you

23   anticipate, Mr. Okula, before you're able to complete

24   production of discovery?

25           MR. OKULA:  I think, your Honor, I need 30 days to

ecj9alac

1    just make sure that I have every piece of paper out the door.

2    I also wish to confer with Mr. Dratel, because there are

3    certain items of physical discovery that were taken from the

4    defendant when she was arrested in Boston a couple weeks ago,

5    and initially taken into custody up there.  I want to give

6    Mr. Dratel the opportunity to review the defendant's

7    belongings.  There are various documents that were found on the

8    defendant, notes in her luggage when she consented to a search

9    of her luggage when she was initially taken into custody.

10   There are also the items of jewelry and the like, if Mr. Dratel

11   wishes to look at that in connection with any application for

12   return of property.

13            THE COURT:  Thank you.

14            Mr. Dratel, the government is asking for 30 additional

15   days for production of discovery.  Do you have a view on that

16   request?

17            MR. DRATEL:  That sounds reasonable, your Honor.

18            I begin a trial January 5 here four or five, six weeks

19   at the outside.  So given that the government will take 30 days

20   to complete discovery, will put us mid to late January.  And my

21   trial will probably end beginning February.  So if we could get

22   until maybe the first or second week of March for motions or --

23   if I don't feel ready to do motions based on what I see in

24   discovery, I will write to the Court probably by mid-February

25   but if we could set a time for maybe the second week of March

21

ecj9alac

1    for motions that would be useful, your Honor.

2            THE COURT:  Thank you.

3            One more question before I set that.

4            Mr. Okula, can I ask:  Do you anticipate any

5    additional defendants or superseding indictments in this case?

6            MR. OKULA:  No, not currently.  Certainly no

7    additional defendants, your Honor.  We don't anticipate at the

8    current time either any significant changes in the indictment.

9    If we're going to proceed to trial, I can't absolutely rule out

10   that there would be some tweaking of what the current

11   indictment is, but there is no vision for some broader category

12   of charges to be included.

13           THE COURT:  Thank you.

14           So, with that information in hand, Mr. Okula, can I

15   ask your view on defense counsel's proposal that I schedule us

16   for a status conference in the second week in March.

17           MR. OKULA:  I think it's quite reasonable, your Honor,

18   and I would join in that application.

19           THE COURT:  Thank you.

20           Mr. Daniels.

21           THE DEPUTY CLERK:  Tuesday, March 10 at 2:30 in the

22   afternoon.

23           THE COURT:  Does that work for counsel?

24           MR. DRATEL:  Yes, your Honor.

25           MR. OKULA:  Yes, your Honor.

ecj9alac

1          THE COURT:  Good.  Thank you.

2          So, let me ask you, Mr. Okula, are there any victims

3  under the CDRA?

4          MR. OKULA:  There are, your Honor.  The Hereditary

5  Disease Foundation is one.  And the other is the United States

6  Department of Treasury in the form of the Internal Revenue

7  Service.  Those are the two victims.

8          THE COURT:  And with respect to the former, is there a

9  process in place to notify them of events and important dates

10  in this matter?

11          MR. OKULA:  Yes, your Honor.  We've been in constant

12  contact with the victim and they know about today's date and

13  they will be informed about the next date as well.

14          THE COURT:  Thank you.

15          So I'm going to set March 10, 2015 as the date for our

16  next conference at 2:30 p.m.

17          Mr. Okula, Mr. Dratel, are there any other things that

18  we should discuss before we talk about Speedy Trial Act?

19          MR. DRATEL:  Just if you give me one second, your

20  Honor.

21          THE COURT:  Yes, Mr. Dratel.  Please go ahead.

22          (Pause)

23          MR. DRATEL:  Nothing, your Honor.  Thank you.

24          THE COURT:  Thank you very much.

25          So, Mr. Okula do you have an application with respect

ecj9alac

1       to the speedy trial clock?

2                   MR. OKULA:  We do, your Honor.  Given the ongoing

3       discovery that the government is providing, in addition the

4       need for defense counsel to review the discovery, what we

5       anticipate to be ongoing dialogue between the government and

6       Mr. Dratel regarding possibly viewing some of the physical

7       discovery and the like, we most respectfully ask your Honor for

8       an exclusion of time under the speedy trial clock in the

9       interests of justice based on those factors until our next

10      appearance before your Honor on March 10.

11                  THE COURT:  Thank you very much.

12                  Mr. Dratel.

13                  MR. DRATEL:  No objection, your Honor.

14                  THE COURT:  So with that, I'm going to exclude time

15      from today until March 10, 2015.  I find that the ends of

16      justice served by excluding such time outweigh the interests of

17      the public and the defendant in a speedy trial because it will

18      allow defense counsel the opportunity to review that discovery

19      that the government will be producing during that time and will

20      allow the parties to consider whether or not there is a

21      potential disposition of this case in lieu of trial.

22                  Good.  So is there anything else that we should

23      discuss?

24                  MR. DRATEL:  I don't think so, your Honor.

25                  MR. OKULA:  No, your Honor.

ecj9alac

1          We're just assuming the magistrate judge in Boston and

2     Judge Maas, after considering various factors, granted the

3     government's application for detention.  We're assuming -- we

4     most respectfully ask that that status be continued, subject to

5     any application, of course, in the future.

6          THE COURT:  Thank you.  And I will continue the

7     current status subject to any application that, Mr. Dratel, you

8     wish to make on behalf of your client.  I assume that you

9     didn't want to do that now.

10         MR. DRATEL:  I'm not consenting but I understand the

11     current status.  If we do want to make an application, we'll

12     alert the Court and Mr. Okula and present something in writing.

13         THE COURT:  Please do.  I look forward to it.  Thank

14     you very much.

15         (Adjourned)

16

17

18

19

20

21

22

23

24

25