F4U7ALAP

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4              v.                              14 Cr. 808 (GHW)

5   KAREN ALAMEDDINE,

6              Defendant.

7   ------------------------------x
                                              New York, N.Y.
8                                             April 30, 2015
                                              2:45 p.m.
9

10  Before:

11                   HON. GREGORY H. WOODS
                                              District Judge
12

13                          APPEARANCES

14  PREET BHARARA
         United States Attorney for the
15       Southern District of New York
    BY:  STANLEY OKULA
16       Assistant United States Attorney

17  JOSHUA DRATEL
         Attorney for Defendant
18
    ALSO PRESENT:  VIRGINIA COLOMBO, U.S. Postal Inspector
19                 CAROLYN WORKING, Special Agent, IRS

20

21

22

23

24

25

F4U7ALAP

1        (Case called)

2        (In open court)

3        MR. OKULA:  Good afternoon, your Honor.  Stanley Okula

4   for the United States.  Seated with me at counsel table are

5   postal inspector Virginia Colombo from the United States Postal

6   Inspection Service and special agent Carolyn Working from the

7   IRS.

8        THE COURT:  Good afternoon.

9        MR. DRATEL:  Good afternoon, your Honor.  Joshua

10   Dratel for Ms. Alameddine, who is seated beside me.

11        THE COURT:  Good afternoon.  And good afternoon, Ms.

12   Alameddine.  I'm sorry for being late.  I will explain to you I

13   am late because the submission of the plea agreement was late,

14   and I have been taking this time to review it.

15        As you know, in my individual rules the government

16   should get the agreement to chambers as soon as practical but

17   no later than three days before the scheduled plea.  I

18   understand it's dated April 29 and today is the 30th.  Still, I

19   would appreciate it, as you would in my situation, if you could

20   send these materials to me in advance.

21        Now, Ms. Alameddine, let me just confirm for the

22   record you are able to understand English?

23        THE DEFENDANT:  Yes.

24        THE COURT:  Thank you.  So, Ms. Alameddine, I have

25   been informed that you wish to plead guilty to Counts One and

F4U7ALAP

1    Seven of the indictment numbered 14 Cr. 808.  Is that correct?

2              THE DEFENDANT:  Yes, your Honor.

3              THE COURT:  Thank you.  Now, before I accept your

4    plea, I'm going to ask you a number of questions.  You and I

5    have been through this before in connection with your

6    arraignment.  The purpose of this is in this instance so I can

7    establish to my satisfaction that you wish to plead guilty

8    because you are in fact guilty and not for some other reason.

9    And I also want to establish that you know what it is that you

10   will be giving up by pleading guilty in this case.

11             If you don't understand any of my questions, or if at

12   any point you would like to confer with your lawyer, or would

13   like to ask me for more information, or clarification of any of

14   my questions, please don't hesitate to ask me to pause.  I

15   would be happy to do so.  It's most important for me to be

16   comfortable that you understand my questions and that the plea

17   that you will be giving me -- if you choose to do so -- is done

18   knowingly, intelligently and voluntarily.  So please let me

19   know.

20             THE DEFENDANT:  Thank you.

21             THE COURT:  Before we proceed, I'm going to ask my

22   deputy, Mr. Daniels, to place you under oath before I begin to

23   administer these questions.

24             (Defendant sworn)

25             THE COURT:  Ms. Alameddine, you are now under oath,

F4U7ALAP

```
 1   which means if you answer any of my questions falsely, you may
 2   be prosecuted for the separate crime of perjury or making false
 3   statements.  The government has the right to use any statement
 4   that you give under oath against you in such prosecution.  Do
 5   you understand that?
 6              THE DEFENDANT:  Yes, your Honor.
 7              THE COURT:  Thank you.  First would you please tell me
 8   your full name.
 9              THE DEFENDANT:  Karen Juanita Alameddine.
10              THE COURT:  Thank you.  And how old are you?
11              THE DEFENDANT:  I'm 58.
12              THE COURT:  Thank you.  Where were you born?
13              THE DEFENDANT:  In Detroit, Michigan.
14              THE COURT:  Thank you.  How far did you go in school?
15              THE DEFENDANT:  Masters degree.
16              THE COURT:  Thank you.  And can you briefly describe
17   your employment experience.
18              THE DEFENDANT:  I worked for several years doing
19   accounting, bookkeeping for over 20 years, I guess you could
20   say.
21              THE COURT:  Thank you.
22              THE DEFENDANT:  For profit and nonprofit.
23              THE COURT:  Thank you very much.  Have you ever been
24   treated or hospitalized for any mental illness?
25              THE DEFENDANT:  No, your Honor.
```

F4U7ALAP

1          THE COURT:  Are you currently or have you recently

2     been under the care of a physician, psychiatrist or

3     psychologist?

4          THE DEFENDANT:  Being incarcerated or not being

5     incarcerated?

6          THE COURT:  You have been under the care of a

7     physician, psychiatrist or psychologist?

8          THE DEFENDANT:  Yes.

9          THE COURT:  You have?

10          THE DEFENDANT:  Yes.

11          THE COURT:  While you have been incarcerated?

12          THE DEFENDANT:  No, your Honor.

13          THE COURT:  OK.  Has this in any way impacted your

14     ability to understand what it is that you would be doing by

15     entering into a plea of guilty?

16          THE DEFENDANT:  No.

17          THE COURT:  How long ago was it that you were treated?

18          THE DEFENDANT:  Up until October of 2014.

19          THE COURT:  Do you mind if I inquire what the nature

20     of the illness was?

21          THE DEFENDANT:  Just anxiety.

22          THE COURT:  Thank you.  Did that make it difficult for

23     you to understand the actions that you were taking at any time?

24          THE DEFENDANT:  No, your Honor.

25          THE COURT:  Thank you.  Are you currently or have you

F4U7ALAP

1   recently been hospitalized or treated for drug addiction?

2           THE DEFENDANT:  No, your Honor.

3           THE COURT:  Within the past 24 hours have you used or

4   taken any alcohol, drugs or medication?

5           THE DEFENDANT:  Just high blood pressure medication.

6           THE COURT:  Thank you very much.  Does that affect in

7   any way your ability to understand or --

8           THE DEFENDANT:  No.

9           THE COURT:  Thank you.  Is your mind clear today?

10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  Thank you.  So, do you understand what is

12  happening in this proceeding?

13          THE DEFENDANT:  Yes, your Honor.

14          THE COURT:  Have you received a copy of the indictment

15  pending against you?

16          THE DEFENDANT:  Yes.

17          THE COURT:  Have you had enough of an opportunity to

18  discuss with your lawyer the charges to which you intend to

19  plead guilty and any possible defenses to those charges?

20          THE DEFENDANT:  Yes, your Honor.

21          THE COURT:  Has your lawyer explained to you the

22  consequences of entering a plea of guilty?

23          THE DEFENDANT:  Yes.

24          THE COURT:  Are you fully satisfied with your lawyer's

25  representation of you?

F4U7ALAP

1          THE DEFENDANT:  Yes.

2          THE COURT:  So, let me turn to you, Mr. Dratel.  Have

3   you discussed this matter with your client?

4          MR. DRATEL:  Yes, I have, your Honor.

5          THE COURT:  Is she capable of understanding the nature

6   of these proceedings?

7          MR. DRATEL:  Yes.

8          THE COURT:  Can I ask both sets of counsel, Mr. Okula

9   and Mr. Dratel, do either of you have any doubt as to the

10   defendant's competence to plead at this time?

11          MR. OKULA:  We have no doubt, your Honor.

12          THE COURT:  Thank you.

13          MR. DRATEL:  No, your Honor.

14          THE COURT:  Thank you.  On the basis of

15   Ms. Alameddine's responses to my questions, my observations of

16   her demeanor here in court, and the representations of counsel,

17   I find that the defendant is competent to enter a plea of

18   guilty at this time.

19          So, Ms. Alameddine, before we turn to your plea, I'm

20   going to explain a number of constitutional rights that you

21   have.  I do this because it's important for you to understand

22   what your rights are and what rights you will be giving up by

23   pleading guilty if you choose to plead guilty.  So, please

24   listen carefully to what I have to say.  Again, if you would

25   like to ask questions of your counsel or me during this, please

F4U7ALAP

1    don't hesitate to let me know.

2              So, first, under the Constitution and laws of the

3    United States, you have the right to plead not guilty to the

4    charges in the indictment.  Do you understand that?

5              THE DEFENDANT:  Yes.

6              THE COURT:  If you did plead not guilty, you would be

7    entitled to a speedy and public trial by a jury on the charges

8    contained in this indictment.  Do you understand that?

9              THE DEFENDANT:  Yes.

10             THE COURT:  At a trial you would be presumed to be

11   innocent, and the government would be required to prove you

12   guilty by competent evidence beyond a reasonable doubt before

13   you could be found guilty.  Do you understand that?

14             THE DEFENDANT:  Yes.

15             THE COURT:  A jury of 12 people would have to agree

16   unanimously that you were guilty, and you would not have to

17   prove that you were innocent if you were to go to trial.  Do

18   you understand that?

19             THE DEFENDANT:  Yes.

20             THE COURT:  At that trial and at every stage of your

21   case you would be entitled to be represented by a lawyer, and

22   if you could not afford a lawyer, one would be appointed at

23   public expense, that is, free of cost, to represent you.  Do

24   you understand that?

25             THE DEFENDANT:  Yes, sir.

F4U7ALAP

1        THE COURT:  During a trial the witnesses for the

2   government would have to come to court and testify in your

3   presence.  Your lawyer could cross-examine the witnesses for

4   the government, object to evidence offered by the government,

5   and offer evidence on your own behalf if you so desired; and

6   you would have the right to have subpoenas issued or other

7   process used to compel witnesses to testify in your defense.

8   Do you understand that?

9        THE DEFENDANT:  Yes.

10        THE COURT:  At trial, although you would have the

11   right to testify if you chose to do so, you would also have the

12   right not to testify.  And if you decided not to testify, no

13   one, including the jury, could draw any inference or suggestion

14   of guilt from the fact that you did not testify.  Do you

15   understand that?

16        THE DEFENDANT:  Yes.

17        THE COURT:  Have you had a full opportunity to discuss

18   with your lawyer whether there is a basis to seek suppression

19   of some or all of the evidence against you on the ground that

20   your constitutional rights were violated?

21        THE DEFENDANT:  Yes.

22        THE COURT:  Thank you.  Do you understand that by

23   pleading guilty you are giving up your right to seek

24   suppression of any evidence against you?

25        THE DEFENDANT:  Yes.

F4U7ALAP

1          THE COURT:  If you were convicted at a trial, you

2     would have the right to appeal that verdict.  Do you understand

3     that?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Even now as you are entering this plea you

6     have the right to change your mind and plead not guilty and go

7     to trial on the charges contained in the indictment.  Do you

8     understand that?

9          THE DEFENDANT:  Yes.

10         THE COURT:  If you plead guilty, you should understand

11    you will also have to give up your right not to incriminate

12    yourself.  That's because I will ask you questions about what

13    you did in order to assure myself that you're pleading guilty

14    because you are in fact guilty and, therefore, you will have to

15    admit and acknowledge your guilt.  Do you understand that?

16         THE DEFENDANT:  Yes.

17         THE COURT:  If you plead guilty, and if I accept your

18    plea, you will give up your right to a trial and all of the

19    other rights that I have just described, other than the right

20    to a lawyer, which you would have under all circumstances at

21    all times, regardless of whether you plead guilty.  But there

22    will be no trial.  I will enter a judgment of guilty, and I

23    will sentence you on the basis of your plea after I have

24    considered a presentence report and whatever submissions I get

25    from your lawyer and the government.  There will, however, be

F4U7ALAP

1    no appeal with respect to whether the government could use the

2    evidence it has against you or with respect to whether you did

3    or did not commit this crime.  Do you understand that?

4              THE DEFENDANT:  Yes, your Honor.

5              THE COURT:  Thank you.  Ms. Alameddine, I just

6    explained to you a number of constitutional rights.  Can I just

7    confirm, do you understand each and every one of these rights?

8              THE DEFENDANT:  Yes, I do, your Honor.

9              THE COURT:  Are you willing to give up your right to a

10   trial and the other rights that I have just discussed with you?

11             THE DEFENDANT:  Yes, your Honor.

12             THE COURT:  So, Ms. Alameddine, we discussed this at

13   your arraignment in December, but please bear with me.  I

14   understand that you have received a copy of the indictment

15   containing the charges against you.  Is that correct?

16             THE DEFENDANT:  Yes.

17             THE COURT:  Have you read the indictment?

18             THE DEFENDANT:  Yes, I have.

19             THE COURT:  Do you understand that in Count One of the

20   indictment you are charged with engaging in a scheme, in this

21   case to defraud a nonprofit foundation of money and property

22   through use of interstate and international wire transfers in

23   violation of 18 U.S.C. 1343?

24             THE DEFENDANT:  Yes.

25             THE COURT:  Now, Mr. Okula, can I turn to you to

F4U7ALAP

1    please state the elements of that offense.

2              MR. OKULA:  Yes, your Honor.  There are three elements

3    to the wire fraud charge contained in Count One:  First, that

4    there existed a scheme or artifice to defraud or to obtain

5    monies by means of false pretenses, representations and

6    promises; second, that the defendant knowingly became a

7    participant in that scheme and artifice to defraud; and, third,

8    that in furtherance of the scheme and artifice of the fraud the

9    defendant either herself engaged in a wire communication in

10   interstate or international commerce or caused such a

11   communication to take place.

12             THE COURT:  Thank you very much, Mr. Okula.

13             Ms. Alameddine, do you understand that in Count Seven

14   of the indictment you are charged with tax evasion for the tax

15   year 2013, in violation of 26 U.S.C., Section 7201?

16             THE DEFENDANT:  Yes, your Honor.

17             THE COURT:  Thank you.  Mr. Okula, can I turn to you

18   again to state the elements of that offense.

19             MR. OKULA:  Yes, your Honor.  There are three elements

20   to the tax evasion offense contained in Count Seven:  First,

21   the existence of a tax deficiency, that is, an additional

22   amount of taxes due and owing as a result of the defendant's

23   conduct during the year in question; second, that the defendant

24   engaged in or caused an affirmative act of evasion to take

25   place; and, third, that the defendant acted willfully within

F4U7ALAP

1   this tax evasion, which means that she violated a known legal

2   duty.

3              THE COURT:  Good.  Thank you very much.  So,

4   Ms. Alameddine, you just heard Mr. Okula describe the elements

5   of each of the two charges to which you intend to plead guilty.

6   Do you understand that if you were to go to trial for each of

7   these counts the government would have to prove all of the

8   elements of each of the counts beyond a reasonable doubt?

9              THE DEFENDANT:  Yes, your Honor.

10             THE COURT:  Thank you.  Now I'm going to tell you

11  about the maximum possible penalties for these crimes.  You

12  should understand that the maximum possible penalty means the

13  most that could possibly be imposed.  It doesn't mean it's what

14  you will necessarily get.  But you have to understand that by

15  pleading guilty you are exposing yourself to the possibility of

16  receiving any combination of punishments up to the maximum I'm

17  about to describe.  Do you understand that?

18             THE DEFENDANT:  Yes, your Honor.

19             THE COURT:  First I'm going to tell you about the

20  possible restrictions on your liberty.

21             The maximum term of imprisonment for Count One is 20

22  years, which could be followed by up to five years of

23  supervised release.

24             The maximum term of imprisonment for Count Seven is

25  five years, which could be followed by up to three years of

F4U7ALAP

1   supervised release.

2          Now, supervised release, as Mr. Dratel has probably

3   already explained to you, means that you would be subject to

4   supervision by the probation office.  There will be rules of

5   supervised release that you will have to follow, and if you

6   violate those rules, you can be returned to prison without a

7   jury trial to serve additional time, with no credit for time

8   you served in prison as a result of your sentence and no credit

9   for any time spent on post-release supervision.  Do you

10  understand that?

11         THE DEFENDANT:  Yes, your Honor.

12         THE COURT:  And you should understand that there is no

13  parole in the federal system, and that if you are sentenced to

14  prison you will not be released early on parole.  Do you

15  understand that?

16         THE DEFENDANT:  Yes, your Honor.

17         THE COURT:  Do you understand that it is possible,

18  taking all the counts together, that you could be sent to

19  prison for a total of 25 years' imprisonment?

20         THE DEFENDANT:  Yes, your Honor.

21         THE COURT:  Second, in addition to these restrictions

22  on your liberty, the maximum possible punishment also includes

23  certain financial penalties.

24         The maximum allowable fine for Count One is $250,000,

25  or twice the gross monetary gain derived from the offense, or

F4U7ALAP

1  twice the gross monetary loss to persons other than yourself,

2  whichever is greater.

3          The maximum allowable fine for Count Seven is

4  $250,000, or twice the gross monetary gain derived from the

5  offense, or twice the gross monetary loss to persons other than

6  yourself, whichever is greater.

7          In addition, I must order restitution to the victims

8  of any offense.  I understand that it is an amount of

9  $1,828,000 to the victim of Count One, but I must order

10  restitution to any victims of your offense.

11          I can also order you to forfeit all property derived

12  from the offense or used to facilitate the offense.

13          Finally, I must also order a mandatory special

14  assessment of $100 for each of the offenses to which you plead

15  guilty.

16          Counsel, do either of you wish to correct or amend any

17  of the penalties that I have just described?

18          MR. OKULA:  No, your Honor, I think you have captured

19  all of the elements.

20          THE COURT:  Thank you.

21          MR. DRATEL:  No, your Honor.

22          THE COURT:  Thank you.  So, Ms. Alameddine, do you

23  understand that these are the maximum possible penalties.

24          THE DEFENDANT:  Yes, your Honor.

25          THE COURT:  So, Ms. Alameddine, do you understand that

F4U7ALAP

1   as a result of your guilty plea, you may lose certain valuable

2   civil rights to the extent you have them or could otherwise

3   obtain them now, such as the right to vote, the right to hold

4   public office, the right to serve on a jury and the right to

5   possess any kind of firearm?

6           THE DEFENDANT:  Yes, your Honor.

7           THE COURT:  Are you serving any other sentence,

8   whether state or federal, or being prosecuted in state court

9   for any crime?

10           THE DEFENDANT:  No, your Honor.

11           THE COURT:  Do you understand, Ms. Alameddine, that if

12   your lawyer or anyone else has attempted to predict what your

13   sentence will be, that their prediction could be wrong?

14           THE DEFENDANT:  Yes, your Honor.

15           THE COURT:  That's good, because no one -- not your

16   lawyer, not the government's lawyer -- no one can give you any

17   assurance of what your sentence will be, since I will be the

18   one to decide your sentence.  I'm not going to do that now.  As

19   I will describe later in more depth, I will wait until I

20   receive a presentence report from the probation department.  Do

21   you understand that?

22           THE DEFENDANT:  Yes, your Honor.

23           THE COURT:  I will review the presentence report

24   prepared by the probation department.  You and the government

25   will have an opportunity to challenge the reported facts and

F4U7ALAP

1    the application of the sentencing guidelines recommended by the

2    probation officer.  I am obliged to do my own independent

3    calculation of the sentencing guidelines range.

4            After your initial advisory range has been determined,

5    I have the authority in some circumstances to depart upward or

6    downward from that range.  I will determine what a reasonable

7    sentence is for you based on the sentencing factors contained

8    in the statute found at 18 U.S.C. Section 3553(a), which may

9    result in imposition of a sentence that's either greater or

10   lesser than the advisory guideline range.

11           Do you understand all of this?

12           THE DEFENDANT:  Yes, I do, your Honor.

13           THE COURT:  And have you and your attorney discussed

14   how these advisory sentencing guidelines might apply in your

15   case?

16           THE DEFENDANT:  Yes, sir.

17           THE COURT:  Do you understand that the sentence

18   ultimately imposed may be different from any estimate your

19   attorney may have given you?

20           THE DEFENDANT:  Yes, your Honor.

21           THE COURT:  Even if your sentence is different from

22   what your lawyer or anyone else has told you it might be, even

23   if it's different from what you expect or from what is

24   contained in the written plea agreement you entered in with the

25   government, you will still be bound by your guilty plea and

F4U7ALAP

1    will not be allowed to withdraw your plea of guilty.  Do you

2    understand that?

3              THE DEFENDANT:  Yes, your Honor.

4              THE COURT:  So, Ms. Alameddine, I just described a

5    number of possible consequences of your plea.  Do you

6    understand these possible consequences of your plea?

7              THE DEFENDANT:  Yes, I do, your Honor.

8              THE COURT:  Thank you.  So, I understand that there is

9    a plea agreement entered into between you, Ms. Alameddine, your

10   lawyer and the lawyer for the government.  Is that correct?

11             THE DEFENDANT:  Yes.

12             MR. OKULA:  Your Honor, I apologize for interrupting.

13   Your Honor went through the litany of consequences.  I didn't

14   know if your Honor intended to later on in the proceeding ask

15   about immigration or deportation consequences, which is

16   something that your Honor I think should allocute the defendant

17   to.

18             THE COURT:  Thank you very much.  I appreciate that.

19             Let me ask, Ms. Alameddine, are you a U.S. citizen?

20             THE DEFENDANT:  Yes, I am.

21             THE COURT:  Thank you.  I took that from her response

22   that she was born in Detroit.  Thank you.

23             So, I have the original copy of the plea agreement in

24   front of me.  Can I ask you, Ms. Alameddine, is it correct that

25   you have -- let me back up.

F4U7ALAP

1          This plea agreement is dated April 29; it is addressed

2     to your lawyer Mr. Joshua L Dratel; it is signed by Mr. Okula.

3     And I'm going to mark this as Court Exhibit 1, and I will after

4     this proceeding provide it to the government to retain in its

5     possession.

6          First, Ms. Alameddine, can I ask did you sign this

7     agreement on the last page?

8          THE DEFENDANT:  Yes, I did.

9          THE COURT:  Thank you.  Did you do that today in the

10    presence of your lawyer?

11         THE DEFENDANT:  Yes, I did.

12         THE COURT:  Thank you.  Did you read the agreement

13    before you signed it?

14         THE DEFENDANT:  Yes, I did.

15         THE COURT:  Did you fully understand it before you

16    signed it?

17         THE DEFENDANT:  Yes.

18         THE COURT:  Now, in this plea agreement you have

19    agreed to a number of things, including but not limited to the

20    filing of tax returns prior to sentencing, the payment of no

21    less than $654,000 in restitution, and forfeiture in the sum of

22    money equal to at least $1,828,000 and other specified

23    property.  And the government has agreed to certain things, all

24    of which is included in this written agreement.

25         You have also agreed not to contest the applicability

F4U7ALAP

1    of civil fraud penalties in connection with the amended tax

2    returns that you have agreed to make.  It is important for you

3    to understand that the plea agreement is binding on you and

4    it's binding on the government.  Do you understand that?

5              THE DEFENDANT:  Yes.

6              THE COURT:  Thank you.  I'm also going to ask you to

7    admit to the forfeiture allegations contained in the indictment

8    with respect to the counts to which you are pleading guilty as

9    outlined in your plea agreement.

10             THE DEFENDANT:  Your Honor, may I speak with my

11   attorney?

12             THE COURT:  Please, take as much time as you like.

13             So, Ms. Alameddine, one of the features of your

14   agreement with the government is that you have agreed on the

15   guidelines range that applies in this case, is that correct?

16             THE DEFENDANT:  Yes.

17             THE COURT:  You should know that agreement is binding

18   on you, it's binding on the government, but it is not binding

19   on me.  I have my own obligation to determine the correct

20   guideline range and what the appropriate sentence is in this

21   case.  I'm not saying I'm going to come up with a range that's

22   any different from what is in the letter agreement, but you

23   need to understand that if I do, then I will not let you

24   withdraw your plea even if the range I determine is higher than

25   the one you agreed to with the government.  Do you understand

1   that?

2                   THE DEFENDANT:  Yes, your Honor.

3                   THE COURT:  Do you understand that under some

4   circumstances you or the government would have the right to

5   appeal any sentence that I impose?

6                   THE DEFENDANT:  The right to appeal?

7                   THE COURT:  Yes.

8                   THE DEFENDANT:  Yes.

9                   THE COURT:  Thank you.  At the same time, in your plea

10  agreement you have waived your right to appeal or otherwise

11  challenge a number of things, including an agreement that you

12  will not file a direct appeal or bring a collateral challenge,

13  including but not limited to an application under Title 28

14  U.S.C., section 2255 and/or Section 2241, nor seek a sentence

15  modification pursuant to 18 U.S.C., Section 3582 of any

16  sentence within or below the stipulated guideline range of 57

17  to 71 months' imprisonment.

18                  Furthermore, you have agreed that any appeal as to

19  your sentence that's not foreclosed by the provision I have

20  just described will be limited to that portion of the

21  sentencing calculation that is inconsistent with or not

22  addressed by that stipulation.

23                  You further agree not to appeal any term of supervised

24  release that is less than or equal to the statutory maximum.

25  You have also agreed not to appeal any restitution that is less

F4U7ALAP

1    than or equal to $2,482,000.  You have also waived a number of

2    rights to withdraw your plea or attack your conviction either

3    on direct appeal or collaterally on the ground that the

4    government has failed to produce any discovery material, Jencks

5    Act material, exculpatory material other than information

6    established in the factual innocence of the defendant, and

7    impeachment material pursuant to Giglio v. United States, that

8    has not already been produced as of the date of signing of your

9    plea a agreement.

10           So you have waived a number of rights in your plea

11   agree.  Do you understand that?

12           THE DEFENDANT:  Yes, your Honor.

13           THE COURT:  Thank you.  Does this written plea

14   agreement constitute your complete and total understanding of

15   the entire agreement between you and the government?

16           THE DEFENDANT:  Yes, your Honor.

17           THE COURT:  Has anything been left out?

18           THE DEFENDANT:  No, your Honor.

19           THE COURT:  Other than what is written in this

20   agreement, has anyone made any promise or offered you any

21   inducement to plead guilty or to sign this agreement?

22           THE DEFENDANT:  No.

23           THE COURT:  Has anyone threatened you, or forced you

24   to plead guilty, or to sign the plea agreement?

25           THE DEFENDANT:  No, your Honor.

F4U7ALAP

1          THE COURT:  Has anyone made a promise to you as to

2     what your sentence will be?

3          THE DEFENDANT:  No, your Honor.

4          THE COURT:  Good.  Thank you very much.

5          Now, Ms. Alameddine, I told you earlier in this

6     proceeding that I would turn to you and ask you to tell me in

7     your words what it is that you did that causes you to believe

8     that you're guilty of the charges to which you are pleading

9     guilty.  Can I please turn to you now to ask you to tell me in

10    your words what it is that you did that makes you believe that

11    you are guilty of the charges.

12         THE DEFENDANT:  Yes.  Between the years 2009 and 2013

13    I took money via wire transfers from a nonprofit organization

14    that I worked for in Manhattan, the Hereditary Disease

15    Foundation.

16         THE COURT:  Thank you.  When you did that, did you

17    know that what you were doing was wrong?

18         THE DEFENDANT:  Yes, your Honor.

19         THE COURT:  Thank you.  Can you tell me what you did

20    with respect to taxes for those years?

21         THE DEFENDANT:  I did not include the money that I

22    took from the foundation when I reported my taxes for each of

23    those years.

24         THE COURT:  Thank you.  And were you aware at the time

25    that you were violating the law by not including those amounts

F4U7ALAP

1    in your tax returns?

2              THE DEFENDANT:  Yes, your Honor.

3              THE COURT:  Thank you.  Let me turn to you,

4    Mr. Dratel.  Do you know of any valid defense that would

5    prevail at trial?

6              MR. DRATEL:  No, your Honor.

7              THE COURT:  Or know of any reason why your client

8    should not be permitted to plead guilty at this time?

9              MR. DRATEL:  No as to both.

10             THE COURT:  Mr. Okula, are there any additional

11   questions that you want me to ask of the defendant?

12             MR. OKULA:  If the court pleases, your Honor, my

13   understanding of what the defendant articulated with respect to

14   Count One is that she took monies of the Hereditary Disease

15   Foundation and transferred them or wire transferred.  I would

16   ask most respectfully that your Honor inquire that at the time

17   the defendant took those funds she understood that they were

18   funds that belonged to the Hereditary Disease Foundation and

19   that she did not have a right to take those.

20             I think by acknowledging that what she did was wrong

21   it sort of gets to it implicitly, but I think it would be

22   better if she made that explicit.

23             I proffer with respect to the jurisdictional basis to

24   Count One that the government would be able to prove various

25   interstate wire transfers that were effectuated as part of that

F4U7ALAP

1  scheme and artifice.

2          THE COURT:  Good, thank you.

3          Let me turn to you, Ms. Alameddine.  You heard the

4  question that was just suggested by Mr. Okula.  Can you please

5  respond?

6          THE DEFENDANT:  Yes.  I did wrongfully take the money

7  from the Hereditary Disease Foundation.

8          THE COURT:  Thank you.  You understood that the money

9  belonged to the Hereditary Disease Foundation.

10         THE DEFENDANT:  Yes, I did.

11         THE COURT:  You understood you did not have a legal

12  entitlement to those funds at the time you took them?

13         THE DEFENDANT:  Absolutely.

14         THE COURT:  Thank you very much.  I am going to turn

15  to you now, Mr. Okula, just to ask you briefly to summarize

16  what the evidence would be if the government -- if we were to

17  go to trial.

18         Ms. Alameddine, I'm going to ask you to listen

19  carefully to what Mr. Okula says regarding the proof that the

20  government would bring.  One of the questions I will then ask

21  you is whether or not the things that Mr. Okula describes you

22  having done is an accurate and true description.

23         Mr. Okula?

24         MR. OKULA:  Yes, your Honor, I would be happy to.

25         Among other things, the government would be able to

F4U7ALAP

prove the following if this matter were to proceed at trial:

That between at least the period 2009 through 2013 the defendant, operating out of offices of Hereditary Disease Foundation both in New York and located in California, exercised or enjoyed the position of a controller, where she had supervisory responsibility with respect to the finances and accounting of that nonprofit organization.  During that period of time, the defendant was aware that the Hereditary Disease Foundation existed in significant measure to issue grant monies for, among other things, genetic research.  People would apply to the Hereditary Disease Foundation, and the HDF upon essentially accepting or agreeing to make a grant would disperse those grant funds to the grant recipients.  The defendant devised a scheme basically to cook the books, if you will, of the Hereditary Disease Foundation by converting to her own personal use by transferring to her own bank accounts monies that were supposed to be disbursed to grant recipients and then covering it up on the Quickbooks of the HDF by making it or disguising the fact that she had personally taken those funds during the period 2009 through 2014.  She took by fraud in excess of $1.8 million dollars.

Now, during the time period of the particular tax years at issue, 2009 through 2013, the defendant caused the preparation of personal income tax returns and caused them to be filed with the IRS.  The United States would be able to

27

F4U7ALAP

1    prove that for the income that consisted of the embezzled funds

2    or the monies embezzled from the Hereditary Disease Foundation,

3    the defendant knowingly and willfully failed to include those

4    amounts as income on the returns that she filed with the IRS,

5    including the 2013 year, where she as a result of the omission

6    of over $500,000 of embezzled income owed an additional amount,

7    that is, there was a tax deficiency in excess of $170,000.

8    That among other things is what we would be able to prove at

9    trial, your Honor.

10             THE COURT:  Good.  Thank you very much.

11             Ms. Alameddine, you just heard Mr. Okula describe

12   certain of your actions.  Was what he said accurate?

13             THE DEFENDANT:  Yes, your Honor.

14             THE COURT:  Thank you.  So, let me ask both counsel,

15   Mr. Okula and Mr. Dratel, do each of you agree that there is a

16   sufficient factual predicate for a guilty plea?

17             MR. OKULA:  Yes, your Honor.

18             MR. DRATEL:  Yes, your Honor.

19             THE COURT:  Do either of you know any reason why I

20   should not accept the defendant's plea of guilty?

21             MR. OKULA:  No, your Honor.

22             MR. DRATEL:  No, your Honor.

23             THE COURT:  Thank you.

24             Ms. Alameddine, can I please ask you to rise.

25             Count One charges you with engaging in a scheme to

F4U7ALAP

1    defraud a nonprofit foundation of money and property through

2    the use of interstate wire transfers, in violation of 18

3    U.S.C., Section 1343.  How do you plead to that count?

4              THE DEFENDANT:  I plead guilty, your Honor.

5              THE COURT:  Count Seven charges you with tax evasion

6    for the year 2013 in violation of 28 U.S.C., Section 7201.  How

7    do you plead to that count?

8              THE DEFENDANT:  Guilty, your Honor.

9              THE COURT:  Now, do you admit to the forfeiture

10   allegations contained in the indictment with respect to Counts

11   One and Seven?

12             THE DEFENDANT:  Yes, your Honor.

13             THE COURT:  Thank you.

14             It is the finding of the court in this case that the

15   defendant is fully competent and capable of entering an

16   informed plea; that the defendant is aware of the nature of the

17   charges and the consequences of the plea; and that the plea of

18   guilty is a knowing, voluntary and intelligent plea, supported

19   by an independent basis in fact containing each of the

20   essential elements of the offenses.  The plea is, therefore,

21   accepted, and the defendant is now adjudged guilty of those

22   offenses.

23             Thank you very much, Ms. Alameddine.  You may be

24   seated.  So, Ms. Alameddine, as I have described earlier in

25   this proceeding, one of the most important factors for me in

F4U7ALAP

1    determining your sentence is going to be the presentence report

2    that's prepared by the probation department.  The probation

3    department will want to interview you in connection with the

4    preparation of that report.

5        Mr. Dratel, do you wish to be present in connection

6    with any interview with that report?

7        MR. DRATEL:  I do.

8        THE COURT:  I am going to order that there be no

9    interview unless counsel is present.

10        I direct that the government provide the probation

11    officer with the factual statement within seven days.

12        Mr. Dratel, please arrange for Ms. Alameddine to be

13    interviewed by the probation department within the next 14

14    days.  Mr. Daniels will notify the probation department that a

15    PSR needs to be prepared in respect to this case.

16        So, Ms. Alameddine, if you choose to speak to the

17    probation department, please be sure that everything that you

18    choose to say is accurate and truthful.  I read the report

19    carefully, and it is important to me in deciding what sentence

20    to impose.

21        You and your counsel will have the opportunity to

22    review a draft of the presentence report.  I encourage or ask

23    you to please read the report and to review it carefully.  Look

24    for errors of fact or otherwise that you can find, anything

25    that you can identify.  Please point them out to your counsel

F4U7ALAP

1    so he can have them incorporated into the final report, or

2    bring any of those errors to my attention at or prior to

3    sentencing.  So, please, focus carefully on that report; it's a

4    very important element.  If you see mistakes, point them out to

5    your lawyer so that he can bring them to my attention.

6              I'm going to set a sentencing date approximately 90 --

7    yes, Mr. Dratel?

8              MR. DRATEL:  There are certain provisions in the plea

9    agreement which have to do with calculating some of the loss

10   figures, and also Ms. Alameddine, who is in custody, has to

11   prepare tax returns for a number of years.  I would just ask if

12   we could get another month out.  Rather than coming back and

13   having to redo it, I just think from experience it's going to

14   take significant time to do all that.

15             THE COURT:  Thank you.  Mr. Okula?

16             MR. OKULA:  We have no objection at all to that, your

17   Honor.

18             THE COURT:  Thank you very much.  I will set a

19   sentencing date then approximately 120 days from now.

20             DEPUTY COURT CLERK:  Friday, August 14 at 2:30 in the

21   afternoon.

22             THE COURT:  Counsel, does that time work for you?

23             MR. OKULA:  It does for the government, your Honor.

24             MR. DRATEL:  Yes, your Honor.

25             THE COURT:  Thank you very much.  So, sentencing is

F4U7ALAP

1  set for August 14th at 2:30 in the afternoon.  Let me refer

2  counsel to my individual rules of practice for criminal cases

3  which contains rules regarding sentencing submission.  The

4  defense submissions are due two weeks prior to sentencing.  The

5  government's submissions are due one week prior to sentencing.

6        Good.  Is there anything else that we should discuss

7  now?

8        MR. OKULA:  Two matters, your Honor, very briefly.

9  First, I think when your Honor adjudicated the defendant guilty

10 of Count Seven your Honor referred to Title 28 of the United

11 States Code.  I think your Honor misspoke and intended to refer

12 to Title 26 which is the Internal Revenue Code.

13       THE COURT:  Thank you.  If I did misspeak, I

14 apologize.  I intended to say Title 26.  That's what my notes

15 say.  And so if I misspoke --

16       I'm sorry, Ms. Alameddine.  Just to make sure we do

17 this correctly and I properly allocuted you as to Count One,

18 I'm going to ask you to please rise, and I'm sorry to make you

19 do this again.  I'm confident I said it correctly, but I don't

20 want to err.  We have already discussed Count One.  Count Seven

21 charges you with tax evasion for the year 2013 in violation of

22 26 U.S.C. 7201.  How do you plead to that count?

23       THE DEFENDANT:  Guilty, your Honor.

24       THE COURT:  Thank you.  It's been previously found

25 that you are fully competent, and I adjudicate you guilty of

F4U7ALAP

1    that offense.  Thank you.

2              Thank you very much, Mr. Okula.

3              MR. OKULA:  I apologize, your Honor.  I'm just trying

4    to be careful.  That's the way I heard it.

5              THE COURT:  No, I appreciate.  I misspoke.

6              MR. OKULA:  Sorry about the tardiness of the written

7    plea agreement.  There were some final matters to be hashed

8    out.  It was finished though yesterday afternoon, and it's all

9    on me for not getting it to the court earlier, so I apologize.

10             THE COURT:  I appreciate that.  Thank you very much.

11   And I mostly mentioned it for apologizing for making you all

12   wait here.

13             MR. DRATEL:  There were some last minute changes, so

14   it was down to the wire.

15             THE COURT:  Thank you very much.  Thank you,

16   Ms. Alameddine.  Thank you for your time.  Thank you, counsel.

17             MR. DRATEL:  Thank you, your Honor.

18             MR. OKULA:  Thank you, Judge.

19             (Adjourned)

20

21

22

23

24

25