G1kdalas
                              Sentence

 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,                 New York, N.Y.

 4              v.                             14 Cr. 0808(GHW)

 5   KAREN ALAMEDDINE,

 6              Defendant.

 7   ------------------------------x

 8
                                              January 20, 2016
 9                                            12:13 p.m.

10
     Before:
11
                          HON. GREGORY H. WOODS,
12
                                              District Judge
13

14                            APPEARANCES

15   PREET BHARARA
          United States Attorney for the
16        Southern District of New York
     BY:  STANLEY J. OKULA
17        Assistant United States Attorney

18   JOSHUA DRATEL
          Attorney for Defendant
19

20          – also present –

21   Virginia Faughnan, U.S. Postal Inspector

22

23

24

25

G1kdalas
Sentence

| | |
|---|---|
| 1 | THE CLERK:  The Court calls the case of United States |
| 2 | versus Karen Alameddine, 14 CR. 808. |
| 3 | Counsel, please state your name for the record. |
| 4 | MR. OKULA:  Good afternoon, your Honor.  Stanley Okula |
| 5 | for the United States and seated with me at counsel table is |
| 6 | United States Postal Inspector Virginia Colombo -- I'm sorry, |
| 7 | Virginia Faughnan.  I am still transitioning to her new married |
| 8 | name. |
| 9 | THE COURT:  Thank very much.  Good afternoon. |
| 10 | MR. DRATEL:  Joshua Dratel for Ms. Alameddine, your |
| 11 | Honor, seated beside me. |
| 12 | THE COURT:  Thank you very much.  Good afternoon. |
| 13 | First, let me apologize for the fact this proceeding |
| 14 | is beginning so late.  This is unusual in this court and I |
| 15 | apologize for the delay.  Mr. Dratel, I'm also sorry that we |
| 16 | were unable to accommodate your request this morning for an |
| 17 | adjournment of this sentencing.  I rejected the request mindful |
| 18 | of the fact that there have been three prior extensions of this |
| 19 | sentencing and with the knowledge that people who are victims |
| 20 | of the offense might be present.  I understand that a prior |
| 21 | adjournment resulted in some victims appearing at a courtroom |
| 22 | with no people.  I didn't think it would be appropriate for me |
| 23 | to adversely affect scheduled people who had planned for this |
| 24 | day as a result of the fact that, as I understand it, you are |
| 25 | under the weather. |

G1kdalas
Sentence

1         Good.  So we are here for a sentencing proceeding for

2    Ms. Alameddine.  Let me review the materials that I have

3    received and reviewed in connection with this proceeding.

4         First, I have reviewed the presentence report, dated

5    January 13, 2016; the defendant's sentencing memorandum, dated

6    December 7, 2015, together with its exhibits; the government's

7    sentencing memorandum, dated January 10, 2016; and a letter

8    from Mr. Jonathan Guest, CEO Hereditary Disease Foundation,

9    dated September 10, 2015.

10        Have each of the parties received all of these

11   materials?

12        MR. OKULA:  Yes, your Honor, on behalf of the

13   government.

14        MR. DRATEL:  Yes, your Honor.

15        THE COURT:  Thank you.

16        Have the two sentencing memoranda been filed with the

17   Clerk of Court?

18        MR. OKULA:  Yes on behalf of the government.

19        MR. DRATEL:  Yes, your Honor.

20        THE COURT:  Thank you.  Are there any other

21   submissions in connection with the sentencing?

22        MR. OKULA:  No, your Honor.

23        MR. DRATEL:  Not to my knowledge, your Honor.

24        THE COURT:  Thank you.  Mr. Dratel, have you read the

25   presentence report?

G1kdalas

Sentence

1          MR. DRATEL:  Yes.

2          THE COURT:  Thank you.  Ms. Alameddine, have you read

3     the presentence report?

4          You can remain seated until I ask you to rise.  Thank

5     you.

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  Thank you.  Have you discussed it with

8     your counsel?

9          THE DEFENDANT:  Yes, your Honor.

10          THE COURT:  Have you had the opportunity to review

11     with your counsel any errors in the presentence report or any

12     other issues that should be addressed by the Court?

13          THE DEFENDANT:  Yes, your Honor.

14          THE COURT:  Thank you.

15          Mr. Okula, have you read the presentence report?

16          MR. OKULA:  I have indeed, your Honor.

17          THE COURT:  Do you have any objections related to the

18     factual accuracy of the presentence report?

19          MR. OKULA:  Only those that are advanced in our

20     sentencing memo --

21          THE COURT:  With respect to restitution?

22          MR. OKULA:  With respect -- correct, the component

23     parts and the total figure of restitution as well as -- well,

24     the Court has the revised sentencing guidelines so that is no

25     longer an issue.  So, yes, simply stated, with respect to the

G1kdalas
Sentence

1   restitution, the final number and components.

2        THE COURT:  Thank you.  I will discuss that

3   momentarily.

4        Mr. Dratel, do you have any objections related to the

5   factual accuracy of the presentence report?

6        MR. DRATEL:  Again, restitution.

7        THE COURT:  Thank you.  Now, with respect to the

8   amount of restitution that is due, the PSR calculates that

9   restitution in the total amount of $2,877,213.66 is due,

10  consisting of $2,123,213.66 to the HDC, 100,000 to Everest

11  National Insurance Company, and $578,000 to the IRS.  At the

12  same time, as just suggested by Mr. Okula, the government's

13  sentencing memorandum calculates the amount owing to the HDC

14  and the IRS differently.  The government calculates that

15  $2,034,839 are owed to the HDC and $640,144 is owed to the IRS.

16       Mr. Okula, can I confirm that the $100,000 that the

17  PSR states is due to Everest is unaffected by your

18  calculations?

19       MR. OKULA:  No, it would be affected, your Honor.  So

20  the gross number that is due to the HDF is the 2,034,839.  The

21  Court should and we're respectfully requesting the Court to

22  back out the 100,000 payable to Everest, yielding a

23  $1,934,839 figure that's appropriately due to the HDF.

24       THE COURT:  Good.  Thank you.  In which case the

25  government's calculation of the aggregate restitution due would

G1kdalas
Sentence

 1    result in a total restitution amount of $2,674,983; is that

 2    correct?

 3             MR. OKULA:  It is, your Honor.

 4             THE COURT:  Thank you.  I calculate that to be

 5    $202,230.66 less than the restitution amount calculated by the

 6    PSR.  Do the parties agree with that calculation?

 7             MR. OKULA:  We do.  And if it is at all helpful to the

 8    Court, your Honor, I have discussed in the wake of our

 9    submission with Mr. Guest, the CEO of the HDF, about the

10    disconnect or disparity in our figures.  And Mr. Guest has

11    authorized me to represent that he is comfortable and supports

12    the numbers that the government had reached and is advancing to

13    the Court.

14             THE COURT:  Good.  Thank you very much.

15             Can I ask whether the parties agree that the correct

16    amounts that the Court should use for calculating restitution

17    are the modified amounts due to the HDC, including Everest and

18    the IRS, as set forth in the United States' sentencing

19    memorandum?

20             MR. OKULA:  We believe that is the correct number,

21    yes, Judge.

22             MR. DRATEL:  Yes, your Honor.

23             THE COURT:  Good.  Thank you.

24             Given that there are no objections to the factual

25    recitations in the presentence report, I adopt the factual

G1kdalas
                              Sentence

1    recitations in the presentence report with the modification

2    agreed to by the parties that the restitution amount owed to

3    the HDC, inclusive of $100,000 to Everest, is $2,034,839 and

4    that the amount owed to the IRS is $640,144.

5           The presentence report will be made a part of the

6    record in this matter and will be placed under seal.  If an

7    appeal is taken, counsel on appeal may have access to the

8    sealed report without further application to the Court.

9           Now, although district courts are no longer required

10   to follow the Sentencing Guidelines, we are still required to

11   consider the applicable Sentencing Guidelines' range in

12   imposing sentence, and to do so it is necessary that we

13   accurately calculate the sentencing range.

14          In this case the defendant pleaded guilty pursuant to

15   a plea agreement to one count of wire fraud, in violation of 18

16   U.S.C. Section 1343, and to one count of tax evasion, in

17   violation of 26 U.S.C. Section 7201.  There is a plea agreement

18   in this case in which the parties stipulated to a particular

19   calculation of the Sentencing Guidelines.

20          Counsel, can I confirm that I am correct that the

21   calculation in the presentence report is substantively

22   consistent with that agreement but for the fact that the

23   presentence report takes into account the updated November 2015

24   Sentencing Guidelines?

25          MR. OKULA:  It is correct, your Honor.

G1kdalas
                              Sentence

1              THE COURT:  Thank you.

2              MR. DRATEL:  Yes.  The revised presentence report,

3      your Honor.

4              THE COURT:  Thank you.

5              Mr. Okula, does the government agree that a two-level

6      adjustment is appropriate in this case under Section 3E1.1(a)?

7              MR. OKULA:  I'm sorry.  You are referring to the

8      adjustment, your Honor, for --

9              THE COURT:  Acceptance of responsibility?

10             MR. OKULA:  Yes, your Honor.  Thank you.

11             THE COURT:  Is the government moving for an additional

12     one-level adjustment under Section 3E1.1(d)?

13             MR. OKULA:  We are indeed, Judge.

14             THE COURT:  Thank you.

15             I calculate the Sentencing Guidelines in a manner

16     consistent with the presentence report.  The applicable

17     Sentencing Guidelines manual is the November 1, 2015 Sentencing

18     Guidelines manual.  The two offenses to which the defendant

19     pleaded guilty are grouped for guidelines calculation purposes

20     pursuant to Section 3D1.2(d).

21             The applicable sentencing guideline applicable to

22     Count One, wire fraud, is Section 2B1.1, and the sentencing

23     guideline applicable to Count Seven, tax evasion, is Section

24     2T1.1.  Pursuant to Section 3D1.3(b), in the case of counts

25     grouped together under Section 3D1.2(d), the offense level

G1kdalas
Sentence

applicable to the group is the one which produces the highest

offense level, which in this case is Section 2T1.1.

Section 2T1.1 provides that the base offense level is

derived from the tax table in Section 2T4.1.  Pursuant to

Section 2T4.1(i), the base offense level is 22 because the

total loss amount was more than 1,500,000 and less than or

equal to 3,500,000 when I aggregate the loss amount associated

with the underlying fraud offense or with the tax loss

associated with the tax offense.

Because the defendant failed to report or to directly

identify the source of income exceeding $10,000 in any year

from criminal activity, a two-level increase is warranted

pursuant to Section 2T1.1(b)(1).  Because the defendant abused

a position of public or private trust and used a special skill

in a manner that significantly facilitated the commission or

concealment of the offense, a two-level increase is warranted

pursuant to Section 3B1.3.

Because the defendant has demonstrated acceptance of

responsibility for her offense through her plea allocation, I

apply a two-level reduction pursuant to Section 3E1.1(a).  Upon

motion by the government, an additional one-level adjustment is

warranted under Section 3E1.1(b).  As a result, the applicable

guidelines offense level is 23.  The defendant has no criminal

history points.  Therefore, her criminal history category is I.

In the plea agreement, counsel, can I confirm that

G1kdalas
Sentence

1    both parties agreed not to seek a departure from the

2    guidelines' sentence, is that correct?

3              MR. OKULA:  That is correct, your Honor.

4              THE COURT:  Mr. Dratel?

5              MR. DRATEL:  For a formal departure, that is correct.

6              THE COURT:  Thank you.  Nonetheless, I have to

7    consider whether there is an appropriate basis for departure

8    within the advisory guideline range within the guidelines'

9    system, and while I recognize that I have the authority to

10   depart, I do not find any grounds warranting a departure under

11   the guidelines.  In sum, the offense level is 23 and the

12   criminal history category is I.  Therefore, the guidelines'

13   range in this matter is 46 to 57 months imprisonment?

14             Does either party have any objections to the

15   Sentencing Guidelines' calculation?

16             MR. OKULA:  No, your Honor.

17             MR. DRATEL:  No, your Honor.

18             THE COURT:  Thank you very much.

19             Mr. Dratel, can I please turn to you?  Do you wish to

20   be heard with respect to sentencing?

21             MR. DRATEL:  Yes, your Honor.  Thank you.

22             THE COURT:  Thank you.

23             MR. DRATEL:  And I'm not going to repeat what's in the

24   written submission but touch on some of the things I think that

25   are important in forming the sentence.  And the first is that

G1kdalas
Sentence

1   obviously Ms. Alameddine pleads guilty.  She acknowledged her

2   conduct very quickly -- no motions, no contest.  Remorse is

3   apparent.  Remorse, however, is just a concept.  The real issue

4   is trying to somehow compensate for her conduct, and in that

5   context, the most important aspect, I think, on a practical

6   level as well as a legal level is restitution and what's going

7   to happen going forward.

8           So the longer Ms. Alameddine spends in prison, the

9   longer authentic restitution will be delayed, the shorter time

10  period there will be for her viable employment life for there

11  to be restitution.  And while there is no formula for it,

12  certainly someone who gets out -- she is already 58.  Someone

13  who gets out at an age, each day, each month each year becomes

14  more difficult to get employment that would generate the kind

15  of income that could make authentic restitution.  So all of

16  these factors militate for, I think, a sentence that is on the

17  shorter side, below the guidelines, with respect to jail time

18  so that the true recompense that could be generated by her

19  sentence would begin earlier, begin more in earnest, and last

20  longer and be more fruitful and productive for the Foundation.

21          I know that the concept of general deterrence has been

22  raised here.  There is no literature that supports the concept

23  of general deterrence as a basis for a longer sentence.  In

24  fact, the literature goes in the opposite direction; it has no

25  impact.  There is no formula for it.  So automatically there is

G1kdalas
Sentence

1    a disparity in terms of what one judge does and what another

2    judge does.  So I think the general deterrence has to be

3    measured in that regard.  And also, even practically, general

4    deterrence just doesn't have a place in this particular

5    sentencing for a couple of reasons, one of which is, again, if

6    as I think the most important aspect is trying to do for the

7    Foundation what can be done not abstractly by more punishment

8    but concretely, tangibly, by restitution, then general

9    deterrence has to take a back seat to that.

10            The second part is that general deterrence as a matter

11   of one sentence versus another is completely illusory.  A

12   sentence at 46 months, the bottom of the guidelines, has no

13   bearing on general deterrence versus a sentence a year or 18

14   months below that.  No one makes that calculation.  No one

15   says, oh, I'll commit this crime if it is only three years and

16   not four years.  There is no basis for that.  That's

17   mythological in the context of what occurs.

18            But more importantly, again, the lower the sentence,

19   the earlier restitution, the better a job she can get, the more

20   restitution she can pay, and the longer that restitution can

21   continue while Ms. Alameddine is employable and can be viably

22   employed given her age.  And so I think all of those factors

23   make a sentence sufficient but not greater than necessary one

24   that is considerably below the guidelines to get to the heart

25   of what can be done tangibly.  Because while it may satisfy

G1kdalas
Sentence

1   certain emotional aspects of a sentence and the length, it will

2   not be -- it will not be of any use for the Foundation as soon

3   as we leave the courtroom.  What will be of use to the

4   Foundation will be when Ms. Alameddine can begin to make

5   restitution in earnest.

6           Thank you, your Honor.

7           THE COURT:  Thank you.  Mr. Dratel, can I ask one

8   question --

9           MR. DRATEL:  Sure.

10          THE COURT:  -- just to anticipate an argument that I

11  expect the United States to make based on their sentencing

12  memorandum?

13          Mr. Okula describes one of the, quote, enduring

14  mysteries of this case as the whereabouts of the stolen funds.

15  Do you wish to address that issue?

16          MR. DRATEL:  Well, I think there are a couple of

17  things.  One is obviously a significant amount was spent

18  pursuing a lifestyle beyond the means for which the ordinary

19  lawful income would have supported.  The second is there are

20  some assets that the government has.  I think in total it's

21  probably -- it's hard to know because some of these assets

22  probably need to be sold so the question of what their value

23  would be down the road or currently, I don't know.  But

24  probably in the range of a quarter of a million dollars I think

25  of between bank accounts and property and other -- personal

G1kdalas
Sentence

1    property and real property and things like that that are out

2    there that the government has seized and which Ms. Alameddine

3    obviously makes no claim to.

4            But, unfortunately, this was over the course of a few

5    years, and so in the course of a few years her husband was

6    disabled during much of this period so she is supporting him as

7    well, and they were spending some time overseas, where he is

8    from, and some in New York -- not in New York but California at

9    the end of the process, and so I don't know that we have a --

10   there is no money out there that has not been turned over or

11   seized by the government.

12           THE COURT:  Thank you very much.

13           Can I turn to you, Ms. Alameddine?  Do you wish to

14   make a statement to the Court?

15           THE DEFENDANT:  Yes, your Honor.

16           THE COURT:  Thank you.  Please rise.

17           THE DEFENDANT:  Your Honor, I want to say to Dr. Nancy

18   Wexler, to the Foundation, to the Board, to Dr. Pardes and to

19   Dr. Alex Wexler that I am truly sorry for what I did.  And I

20   know that I hurt a lot of people in my actions and especially

21   the years that the Foundation put into trying to help other

22   people and I was basically selfish.  But I wanted to say that

23   in 14 months that I have been incarcerated, I've really had a

24   chance to look at my behavior.  And it's my goal, my desire

25   and, God willing, I will be able to pay back the Foundation

G1kdalas
Sentence

1  every penny that I took.  And I'm very sorry for what I did,

2  and I just hope that one day they will be able to forgive me.

3            And I want to apologize to my family as well.

4            That's all, your Honor.

5            THE COURT:  Thank you very much, Ms. Alameddine.

6            Mr. Okula, does the government wish to be heard with

7  respect to sentencing?

8            MR. OKULA:  Yes, briefly, your Honor, and I, too, do

9  not intend to repeat all of the points we made in our

10  sentencing memo but I would like to deal with essentially two

11  things, your Honor, first respond to certain of the points made

12  by Mr. Dratel and also to outline some other factors I think,

13  most respectfully, should be front and center in the Court's

14  consideration of where the Court should impose sentence.

15            First I would like to note that Mr. Guest as well as

16  Nancy Wexler, the President of the HDF, are here in court

17  today.  Mr. Guest is here and Ms. Wexler to the far left are

18  seated in the court.

19            With respect to Mr. Dratel's argument or framing of

20  the issue as one -- or the essential goal today being how to

21  compensate the HDF, I think, most respectfully, your Honor,

22  that is the wrong prism through which the Court should view the

23  important factors of sentencing.  The principal reason for

24  that, Judge, is as a result of her conviction for fraud as a

25  professional, the defendant probably will be able to obtain

G1kdalas
Sentence

1   some sort of employment after she is released from

2   incarceration, but the notion that she is going to be able to

3   find gainful employment with these multiple fraud convictions

4   sufficient that she is going to make meaningful compensation or

5   restitutionary payments to the HDF I think is a farfetched

6   notion.  I just don't think -- and my experience in this area

7   sort of bears this out, having prosecuted a good number of

8   professionals and finding out how they try to fare in the

9   world -- the working world in the wake of serving time in

10  prison or in the wake of pleading guilty to a fraud charge.

11  There is no meaningful, I think, compensation that she is going

12  to experience that is beyond her own living costs and the costs

13  for her dependents that she is going to be able to make to the

14  HDF.  I respectfully suggest that that is not the correct prism

15  through which to view the important factors at sentencing.

16          I think, your Honor, the issue of general deterrence

17  is vitally important here as well as an understanding of the

18  incalculable harm that was caused to the HDF.  Taking the

19  second point first -- and Mr. Guest alludes to this in his

20  victim letter but I think it is worthy of repeating to the

21  Court.  The HDF did not just suffer the monetary loss of the

22  millions that the defendant stole over the periods of years.

23  Their reputation was harmed, your Honor.  There was and is

24  skittishness on behalf of people who had contributed to the HDF

25  in the past to making further contributions as a result of what

G1kdalas
Sentence

1    they perceived as a potential lack of control at the HDF.  So

2    that harm caused this organization, an organization that beyond

3    dispute does terrific work for the good of mankind.  The harm

4    that they caused by even one person who may be disinclined to

5    give as much money or may refuse to give money in the future

6    because they saw the defendant take advantage of the trust that

7    the HDF placed in her I think is a harm that the Court should

8    consider very seriously when imposing sentence.

9            The HDF is not in the position it was before the

10   defendant started this and before it came to light about the

11   defendant's crimes.  And so the pain, the cause to the victim

12   in this regard I think should be front and center when the

13   Court imposes sentence.

14           And more broadly speaking, I think the message of

15   general deterrence to people who are given these positions of

16   trust to people with accounting backgrounds and tax backgrounds

17   who are trusted by their organizations to do good by them --

18   after all, the defendant was allowed by the New York-based HDF

19   essentially to carry on her duties from California because the

20   defendant convinced the organization that her family

21   responsibilities and other things in California should let

22   her -- they should let her work from there.  For years they let

23   her do that.  They bent over backwards making accommodations

24   for her, and the way she paid them back was essentially to

25   engage in the acts that she did.

G1kdalas
Sentence

1          So the message, I think, your Honor, for people who

2     are insiders who are trusted by organizations to keep safe

3     their funds, particularly nonprofit organizations who are not

4     in the money-making game but are in the do-good game, I think

5     is important that a strong message be sent out to those people

6     who consider whether it is going to in the end pay for them to

7     engage in this type of conduct.

8          I think that covers most of the points that I wanted

9     to cover, your Honor.  I do want to address the "where is the

10    money" issue that we alluded to in our memo.  And we raise that

11    issue, your Honor, because as part of the financial

12    investigation we did of the defendant in a case like this, we

13    typically ask, or look, to see whether the defendant is living

14    beyond his or her means, whether there are numerous extravagant

15    purchases that seem to account for where the money went.  There

16    is an absence of that here, your Honor.  To be sure, there are

17    some indications that money was spent on, for instance, this

18    recreational vehicle that took up a couple of hundred thousand

19    dollars and was largely financed, but beyond that and beyond

20    some small purchases of jewelry and the like, there wasn't an

21    extensive indication of living beyond means.  No extensive real

22    estate purchases and things like that.

23          So I think that there is a significant issue of "where

24    is the money."  There were indications, your Honor, that the

25    defendant made transfers of some of the funds I think to or on

G1kdalas
Sentence

1   behalf of her husband, who is in the Middle East and remains in

2   the Middle East and has not made a statement in connection with

3   this sentencing on behalf of the defendant.  The amount that

4   wases forfeited or seized by the government totals

5   approximately $200,000.  There is about $180,000 in the bank

6   account that we froze.  And property wise, I think the net that

7   is going to be brought after the marshal's sale and disposition

8   of the assets is probably another 20 to $30,000, bringing it to

9   about 200,000, maybe a little bit higher, but that is a far cry

10  from the aggregate amount that was taken by the defendant over

11  the course of this scheme.

12         And my final point, your Honor, and it is tied into

13  this issue of where is the money, Mr. Dratel in his sentencing

14  memo, which otherwise covers all of the issue, he argues that

15  the defendant has demonstrated basically super remorse or

16  remorse beyond that present in a case.  I submit, your Honor,

17  that if the defendant really wanted to come clean with respect

18  to the victim, she would have immediately upon being arrested

19  and realizing what deep water she was in try to work with them,

20  try to collaborate with the HDF, make an elaborate written

21  submission about where the money went, to try to account for it

22  in some manner or form, but we have seen nothing like that,

23  your Honor.

24         So I think that a defendant who was caught redhanded,

25  as she was, who has been incarcerated since the time of her

SOUTHERN DISTRICT REPORTERS, P.C.<br>(212) 805-0300

G1kdalas
Sentence

1    offense and who has met every opportunity since her

2    incarceration to provide a roadmap to the victim about how and

3    where the money was taken, I think the absence of that shows

4    that her remorse is basically too little too late, your Honor.

5            Unless the Court has any further questions, we would

6    respectfully suggest that the Court follow the recommendation

7    of Probation, who recommended a 60-month sentence in this case,

8    your Honor.  Thank you.

9            THE COURT:  Thank you very much.  Is there any --

10           MR. DRATEL:  Your Honor.

11           THE COURT:  Yes, Mr. Dratel.

12           MR. DRATEL:  May I?

13           THE COURT:  Please.

14           MR. DRATEL:  First, the last bit, that actually

15   contradicts the government's position in the sentencing memo,

16   which is that the Sentencing Guidelines is a reasonable

17   sentence and therefore that would have to control, that if

18   there are two reasonable sentences below, that sentence always

19   controls.

20           So to take the last points first, there is no

21   provision, and, you know, someone in a criminal case and there

22   is no obligation for the kind of process that the government

23   has suggested here.  But even with that, Ms. Alameddine has

24   done that.  We filed a very comprehensive CJA affidavit, and as

25   the Court may recall, that required some effort when I came in

G1kdalas
Sentence

as counsel because of trying to list all the assets.  Ms.

Alameddine filed a comprehensive financial disclosure form with

Probation as well.  There were real estate purchases.  There

are horses and things like that.  So there was a lifestyle that

was created as a result of this.  And it's impossible to prove

a negative, but you would think that given the fact that the

government has all of the bank records and everything, they

could come up with something tangible to establish a

positive -- in other words, that there is money out there that

is not accounted for -- as opposed to making us prove a

negative, which we cannot do.  So in that respect I don't think

that is an appropriate factor to take into account here because

the facts don't establish it and the government can't just

speculate about it and get a higher sentence as a result.

        Second, the government suggests that she should trade

prison time for restitution because restitution won't be

sufficient at the end of the day.  I don't think that is an

appropriate doctrine for sentencing either, particularly in the

context of what's at issue here.  We're trying to recover every

penny possible for the Foundation for the future.  The way to

do it is a shorter sentence, not to add time, because the full

restitution may not be made within the course of Ms.

Alameddine's lifetime.  I don't think that is an appropriate

measure of sentencing.

        Nothing about additional jail time will restore the

G1kdalas
Sentence

1   reputation of the Foundation.  The only restoration for the

2   Foundation at this point is monetary.  When we leave here

3   today, there will be no message to anyone.  No one will get any

4   message.  The only people affected by this sentence will be Ms.

5   Alameddine and the Foundation, and the lower the sentence, it

6   will be negative for both of them.  And the incremental notion

7   of a longer sentence somehow having a general deterrence, in

8   fact, even if general deterrence exists in the world, for which

9   there is no literature that supports that, but even if that

10  were the case, an incrementally longer sentence has no impact

11  in the general deterrence context.  But it does have an

12  impact -- an incrementally shorter sentence does have an impact

13  for what happens once this process is over and once all the

14  emotional aspect is gone is that the Foundation will get more

15  money.  There are families that go to watch people get executed

16  and they don't walk away with closure.  It is nearly unanimous

17  in that regard.  What matters here are the dollars that were

18  taken and the dollars that could be given back during the

19  course of Ms. Alameddine's lifetime.  And the Court has power

20  to set a percentage of gross income and done.  So there can be

21  authentic restitution here.

22          Thank you, your Honor.

23          THE COURT:  Thank you very much.

24          Mr. Okula, would you care to make any additional

25  remarks?

G1kdalas
Sentence

1          MR. OKULA:  No, your Honor.  Thank you.

2          THE COURT:  Thank you.

3          Are there any victims present who wish to address the

4     Court?

5          (Pause)

6          MR. OKULA:  I have been informed, because I spoke with

7     Mr. Guest beforehand, that unless the Court has any specific

8     inquiries, that Mr. Guest and Ms. Wexler and the HDF are

9     prepared to rest on the submission that they made, your Honor.

10         THE COURT:  Thank you very much.

11         Is there any reason that a sentence should not be

12    imposed at this time?

13         MR. OKULA:  No, your Honor.

14         MR. DRATEL:  No, your Honor.

15         THE COURT:  Thank you.

16         I will now describe the sentence that I intend to

17    impose, but counsel will have a final opportunity to make legal

18    objections before the sentence is finally imposed.

19         As I've stated, the guidelines' range applicable to

20    this case is 46 to 57 months of imprisonment.  I've considered

21    the guidelines' range.  Under the Supreme Court's decision in

22    Booker and its progeny, the guidelines' range is only one

23    factor that I must consider in deciding the appropriate

24    sentence.  I'm also required to consider the other factors set

25    forth in 18 U.S.C. Section 3553(a).  These include, first, the

G1kdalas
Sentence

1   nature and circumstances of the offense and the history and

2   characteristics of the defendant; second, the need for the

3   sentence imposed to (a) reflect the seriousness of the offense,

4   to promote respect for the law, and to provide just punishment

5   for the offense, (b) to afford adequate deterrence to criminal

6   conduct, (c) to protect the public from further crimes of the

7   defendant, and (d) to provide the defendant with needed

8   education or vocational training, medical care or other

9   correctional treatment in the most effective manner; third, the

10  kinds of sentences available; fourth, the guidelines' range;

11  fifth, any pertinent policy statement; sixth, the need to avoid

12  unwarranted sentence disparities among defendants with similar

13  records who have been found guilty of similar conduct; and,

14  seventh, the need to provide restitution to any victims of the

15  offense.  Ultimately, I'm required to impose a sentence

16  sufficient but no greater than necessary to comply with the

17  purposes of sentencing that I mentioned a moment ago as set

18  forth in the statute at Section 3553(a).

19         Now, I have given substantial thought and attention to

20  the appropriate sentence in this case, considering all of the

21  3553(a) factors and the purposes of sentencing as reflected in

22  the statute.  Now, based on a review of all of the factors,

23  which I will discuss in more detail in a moment, I intend to

24  impose a guidelines' sentence of 48 months of incarceration to

25  be followed by three years of supervised release, subject to

G1kdalas

Sentence

the mandatory and special conditions described in the

presentence report, which I'll describe with more specificity

later.  I do expect to order restitution and to impose a

forfeiture order.  I do not expect to impose a fine.  I will

impose the mandatory fee of $100 for each offense to which the

defendant pleaded guilty.  I'll discuss each of those points

with more specificity after I have reviewed my reasoning.

First, this offense is, I believe, truly

reprehensible.  Ms. Alameddine was in a position of trust at

the Hereditary Disease Foundation, a charity dedicating its

purpose and efforts to curing Huntington's Disease, a

devastating illness.  After the only other financial person

working for the organization left and she had sole care of the

charity's finances as its CFO, Ms. Alameddine began to abuse

that trust.  Over the course of many years as described in the

PSR, she orchestrated the theft of large amounts of money in a

sophisticated way, taking advantage not only of the

organization's trust in her but also the special skills that

she applied to obscure her illegal activities.

She was very successful in her efforts to hide her

activity.  It was only after she voluntarily left the

organization, having secreted away over $2 million, that Ms.

Alameddine's fraud was discovered.  The Hereditary Disease

Foundation spent large amounts of money, as I understand it, to

untangle Ms. Alameddine's web of deception, and I am told that

G1kdalas
                            Sentence

1    the organization was shaken with donors and beneficiaries

2    understandably questioning whether the HDF was the best

3    investment of time and money in light of the revelation of the

4    corruption of the organization's CFO.

5            In sum, with respect to the nature of this offense,

6    Ms. Alameddine stole money, stole research funds designed to

7    provide hope for people suffering from a devastating illness,

8    and in the process cheated her government and fellow taxpayers,

9    all to fuel what she described here as her selfishness, to fuel

10   her greed.

11           Ms. Alameddine was born in Detroit in 1957.  The PSR

12   describes that Ms. Alameddine described to the probation

13   officer a happy childhood with her two brothers.  Her father

14   was an orthopedic surgeon.  Her mother, an accountant, raised

15   her and the other children.  I understand that Ms. Alameddine's

16   childhood was not perfect, that she suffered from two

17   unforgivable instances of abuse.  Still, she had opportunities

18   that are frankly not available to most of the defendants that I

19   sentence here.

20           My sense, as described by Ms. Willgren in her letter

21   to me, is that, as Ms. Willgren stated, Ms. Alameddine is,

22   quote, an exceptionally intelligent and creative individual,

23   close quote.  She worked to get her college degree and

24   ultimately her MDA, and I understand that she did positive work

25   at her job in the Bronx before departing to the Foundation.

G1kdalas
Sentence

1          I recognize that Ms. Alameddine has struggled with

2     weight and alcoholism.  She has been in therapy since age 19,

3     including for depression and anxiety.  A letter from Ms. May,

4     highlighted in Ms. Alameddine's submission to me, describes Ms.

5     Alameddine's situation at the Foundation as a, quote, pressure

6     cooker, close quote, that increased her anxiety, and Ms.

7     Alameddine's drinking issue grew worse to deal with the stress

8     at work.

9          Frankly, I do not know -- Ms. May does not say --

10    whether the stress of her experience of that job was a result

11    of the fact that she was perpetrating a massive, complicated

12    fraud on her employer as opposed to any other stressor.  At the

13    same time, I recognize those are real challenges that Ms.

14    Alameddine faced.

15         She has a supportive, though I understand long

16    distance, relationship with her husband, and I know from the

17    letters that I received that she has a supportive family and

18    friends.

19         Ms. Alameddine expressed her remorse for the crime to

20    me in letter and again here at sentencing.  She has offered to

21    agree to pay restitution and to forfeit her assets that the

22    government has located.  I appreciate both of those things, and

23    I appreciate Mr. Dratel's remarks regarding the difficulty of

24    proving a negative, the nonexistence of other funds.  What

25    Mr. Okula argues, though, is a positive, which is the lack of

G1kdalas
Sentence

assistance in tracing the full amount of the funds that Ms.

Alameddine stole.

          In this instance, given the nature of Ms. Alameddine's

crime, which involved an extended, protracted deception, it's

difficult for me to distinguish true remorse from regret now

that she has been caught and is experiencing the adverse

consequences of her decisions.  The letters that I received

from Ms. Alameddine and her friends and family regarding her

remorse do not offset the evidence of Ms. Alameddine's poor

character as illustrated by the long-running abuse of trust and

stealing money from the Foundation.

          While the PSR reports that Ms. Alameddine told the

officer that she decided to leave the HDC because she did not

wish to perpetrate the fraud any more, I cannot tell if that

decision was driven by remorse or if having stolen more than $2

million she had simply met her illegal goal.  I do not know.

          I believe that a significant sentence is important in

this case to impose a just punishment.  I'm required to

consider the deterrent effect both on Ms. Alameddine personally

and general deterrence pursuant to the statute.  The parties'

submissions on this point were quite comprehensive.

          I hope that the likelihood that Ms. Alameddine will be

placed in a position of trust, to steal as she did from the

Foundation, is low.  At the same time, she has real skills and

intelligence and creativity, which I do not doubt.  So I do not

G1kdalas
Sentence

1    think that she will commit this crime in the same way again.  I

2    do believe that there is a need to prevent her from applying

3    those same skills to criminal ends in the future.

4           Moreover, understanding the comments by Mr. Dratel, I

5    believe that there is a real need for a significant sentence to

6    further the goals of general deterrence.  Ms. Alameddine, like

7    other white-collar criminals, made a conscientious decision --

8    this is what business people do, they balance risk with reward.

9    This is a sophisticated person with an MBA who can balance risk

10   and reward.  This is not a person who is dealing drugs on the

11   street with no other options and no ability to evaluate their

12   choices.  Given the discount to risk as a result of the

13   difficulty of uncovering this type of financial crime, I

14   believe that white-collar criminals should have in mind the

15   prospect of a significant sentence as they do that mental

16   calculation, as Ms. Alameddine did the mental calculation

17   between the harm that she would do, her own personal needs, and

18   the risk that she was undertaking by committing her criminal

19   acts.

20           I believe that Ms. Alameddine will be able to use the

21   period of incarceration for useful training, medical care and

22   other correctional needs.  I very much appreciate the work that

23   Ms. Alameddine has done while incarcerated to date.  I

24   understand that she has been helpful to other inmates.  I hope

25   that Ms. Alameddine will continue to obtain help with alcohol

G1kdalas
Sentence

```
 1    abuse issues.  I hope that time away from alcohol together with

 2    the counseling that she will obtain in prison will help her

 3    deal with those issues.  And I appreciate that Ms. Alameddine

 4    has worked over these last several months to improve herself,

 5    and I hope that she'll continue to do so after sentencing.

 6          I have considered the kinds of sentences available.

 7    In this case, given the nature of the offense, I believe that a

 8    sentence with a term of imprisonment is appropriate.  I have

 9    given serious consideration to the guidelines and the policy

10    statements.  In this case I believe that a guidelines' sentence

11    is appropriate.

12          I have considered the need to avoid unwarranted

13    sentence disparities with other defendants.  I've reviewed the

14    statistics that Mr. Dratel presented in his comprehensive

15    submissions regarding the level of variances in this district,

16    but ultimately by imposing a guideline sentencing I expect I'm

17    furthering the goal of avoiding sentencing disparities in this

18    district and by imposing a guideline sentence.  Ultimately,

19    however, as required by the statute, the sentencing decision is

20    one that I must make, focused on the nature of the particular

21    defendant and this offense, and I believe that this is the

22    appropriate sentence for the defendant given my analysis of the

23    factors set forth in the statute.

24          I have considered the need to provide restitution to

25    victims of the offense and I recognize that a longer term of
```

G1kdalas
Sentence

 1    incarceration will, as Mr. Dratel argues, reduce Ms.

 2    Alameddine's opportunity to make additional money to pay

 3    restitution.  I have weighed that factor in my analysis.  At

 4    the same time, I take into consideration Mr. Okula's comments

 5    regarding the likelihood that further employment will make a

 6    meaningful dent on Ms. Alameddine's restitution obligations and

 7    I discount it, this factor, somewhat as a result.  Still, I've

 8    considered it.

 9            With that, Ms. Alameddine, please rise for the

10    imposition of sentence.

11            It is the judgment of this Court that you be sentenced

12    to 48 months of imprisonment with respect to Count One and 48

13    months of imprisonment with respect to Count Seven, with those

14    terms to be served concurrently.  I find that sentence to be

15    sufficient but not greater than necessary to comply with the

16    purposes of sentencing as set forth in 18 U.S.C., Section

17    3553(a)(2).

18            Ms.Alameddine, following your term of imprisonment, I

19    am sentencing you to a term of three years of supervised

20    release for each of your counts of conviction, with each such

21    term to be served concurrently.

22            The mandatory conditions of supervised release shall

23    apply.  They are:  The defendant shall not commit another

24    federal, state or local crime.  The defendant shall not

25    illegally possess a controlled substance.  The defendant shall

Sentence

1    not possess a firearm or destructive device.  The defendant

2    shall cooperate in the collection of DNA, as directed by the

3    probation officer.

4         The mandatory drug testing condition is suspended due

5    to the imposition of a special condition requiring drug

6    treatment and testing.

7         The standard conditions of supervised release 1

8    through 13 shall apply.  In addition, the following special

9    conditions shall apply:  The defendant shall submit her person,

10   residence, place of business, vehicle, or any other premises

11   under her control to a search on the basis that the probation

12   officer has reasonable belief that contraband or other evidence

13   of a violation of the conditions of her release may be found.

14   The search must be conducted at a reasonable time and in a

15   reasonable manner.  Failure to submit to a search may be

16   grounds for revocation.  The defendant shall inform any other

17   residents that the premises may be subject to search pursuant

18   to this condition.

19        The defendant shall participate in an outpatient

20   treatment program approved by the United States Probation

21   Office which program may include testing to determine whether

22   the defendant has reverted to using drugs or alcohol.  The

23   defendant shall contribute to the cost of services rendered

24   based on the defendant's ability to pay or availability of

25   third-party payment.  The Court authorizes the release of

G1kdalas
Sentence

1    available drug treatment evaluations and reports, including the

2    presentence investigation report, to the substance abuse

3    treatment provider.

4          The defendant shall participate in an outpatient

5    mental health treatment program approved by the United States

6    Probation Office.  The defendant shall continue to take any

7    prescribed medication unless otherwise instructed by the

8    healthcare provider.  The defendant shall contribute to the

9    cost of services rendered based on the defendant's ability to

10   pay and the availability of third-party payments.

11         The Court authorizes the release of available

12   psychological and psychiatric evaluations and reports,

13   including the presentence investigation report, to the

14   healthcare provider.

15         The defendant shall not incur new credit charges or

16   open additional lines of credit without the approval of the

17   probation officer unless the defendant is in compliance with

18   the installment payment schedule.

19         In the event that the defendant secures a position

20   that allows her unsupervised access and/or control over an

21   individual, corporation's or other nonnatural persons' assets,

22   she shall inform her employer of her conviction for this

23   offense.

24         The defendant shall provide the probation officer with

25   access to any requested financial information.

G1kdalas
Sentence

1       The defendant shall be supervised in her district of

2   residence.

3       The defendant is to report to the nearest Probation

4   Office within 72 hours of release from custody.

5       Given that Ms. Alameddine is going to be required to

6   pay restitution and will be required to comply with an order of

7   forfeiture, I am not imposing a fine on the defendant.

8       The defendant must pay to the United States a total

9   special assessment of $100 for each offense for which she was

10  convicted, for a total of $200, which shall be due immediately.

11      I'm ordering that the defendant forfeit all property,

12  real and personal, involved in the offense traceable to such

13  property, including a sum of U.S. currency totaling to at least

14  $1,186,856, which constitutes or was derived from proceeds

15  traceable to the offense and which includes at least the

16  following:  (a) Any and all U.S. currency on deposit in account

17  number 9803612739 in the name of Dean & Company LL; (b), any

18  and all U.S. currency on deposit in account number 9804698331

19  in the name of Karen J. Alameddine; (c), any and all U.S.

20  currency on deposit in account number 9804427145 in the name of

21  Karen J. Alameddine; and (d) the various items of jewelry

22  seized from Ms. Alameddine on November 14, 2014 and currently

23  in the custody of the IRS, including but not limited to the

24  specific items of property described in the Indictment for this

25  offense.

G1kdalas
Sentence

1        Now, I'm also going to order restitution in an amount

2   consistent with our discussion earlier as modified as set forth

3   in the government's memo.  The aggregate amount of the

4   restitution that I am going to order is consistent with our

5   conversation previously.  The aggregate amount of that

6   restitution is $2,674,983, to be allocated among the three

7   victims in accordance with the terms of the restitution order.

8        Can I ask, Mr. Okula, is there a form restitution

9   order that the parties would like me to enter?

10        MR. OKULA:  I don't have it with me, your Honor.  What

11   I respectfully request, your Honor, is, consistent with the

12   Court's pronouncement today of the amounts, being given leave

13   by the Court to present that this afternoon and deliver it to

14   chambers together with the stipulated proposed forfeiture order

15   as well.

16        THE COURT:  Thank you very much.

17        Mr. Dratel, is that acceptable to you?

18        MR. DRATEL:  Yes, your Honor.

19        THE COURT:  Thank you very much.

20        Thank you.  Does either counsel know of any legal

21   reason why this sentence shall not be imposed as stated?

22        MR. OKULA:  No, your Honor.

23        MR. DRATEL:  No, your Honor.

24        THE COURT:  Thank you very much.

25        The sentence as stated is imposed.  I find that

G1kdalas
Sentence

1  sentence to be sufficient but not greater than necessary to

2  comply with the purposes of sentencing set forth in the statute

3  at 18 U.S.C. Section 3553(a)(2).

4          Thank you, Ms. Alameddine.  You may be seated.  Thank

5  you.

6          THE DEFENDANT:  Thank you, your Honor.

7          THE COURT:  You have a right, Ms. Alameddine, to

8  appeal your conviction and sentence except to whatever extent

9  you may have validly waived that right as part of your plea

10 agreement.  The Notice of Appeal must be filed within 14 days

11 of the judgment of conviction.  If you are not able to pay the

12 costs of an appeal, you may apply for leave to appeal in forma

13 pauperis.  If you request, the Clerk of Court will prepare and

14 file a Notice of Appeal on your behalf.

15         Are there any other applications?

16         MR. OKULA:  Yes, your Honor.  Pursuant to the terms of

17 the parties' plea agreement, the United States respectfully

18 moves to dismiss at this time Counts Two, Three, Four, Five and

19 Six, which remain open now.

20         THE COURT:  Thank you.  Mr. Dratel, any objection?

21         MR. DRATEL:  No, your Honor.

22         THE COURT:  Thank you.  I am going to grant that

23 motions and dismiss Counts Two, Three, Four, Five and Six.

24         Are there any other applications?

25         MR. OKULA:  None on behalf of the government.  Thank

G1kdalas
                         Sentence

1   you, your Honor.

2          THE COURT:  Thank you.  Mr. Dratel?

3          MR. DRATEL:  Yes.

4          THE COURT:  Thank you.

5          MR. DRATEL:  Will the Court recommend designation to

6   FPC Alderson, West Virginia?

7          THE COURT:  Thank you.  I will be happy to make that

8   recommendation.  As you know, the BOP is not bound by it.

9          Let me thank both of you, counsel, for your arguments

10  and sentencing submissions.  Both sets of written submissions

11  were among the best submissions that I have received in my

12  short time on the bench.  They are very well prepared, and I

13  appreciate the work that went into them.

14         MR. OKULA:  Thank you, your Honor.

15         MR. DRATEL:  Thank you.

16         THE COURT:  Is there anything else that we should

17  discuss?

18         MR. OKULA:  Nothing, Judge.

19         MR. DRATEL:  No, your Honor.

20         THE COURT:  Thank you very much.  This proceeding is

21  adjourned.

22

23                         -   -   -

24

25